

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-21-2007

# Steigerwalt v. Terminix Intl Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4751

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Steigerwalt v. Terminix Intl Co" (2007). *2007 Decisions.* Paper 896.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/896

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-4751

———————

MICHAEL P. STEIGERWALT

v.

TERMINIX INTERNATIONAL COMPANY, LP; TERMINIX INTERNATIONAL,
INC.; TERMINIX COMMERCIAL; SERVICEMASTER CONSUMER SERVICES,
LIMITED PARTNERSHIP; JOHN DOES 1-5, Jointly, Severally, and In the Alternative

TERMINIX International Company, LP,

Appellants

———————

On Appeal from the United States District Court
for the District of New Jersey
D.C. No. 06-cv-01855
District Judge: Hon. Joseph E. Irenas

———————

Submitted Under Third Circuit LAR 34.1(a)
May 11, 2007

Before: RENDELL, JORDAN and ALDISERT, Circuit Judges.

(Filed:   June 21, 2007)

———————

OPINION OF THE COURT

———————

ALDISERT, Circuit Judge.

We are asked to reconsider the District Court's decision not to compel arbitration of Steigerwalt's claim that his employer committed an intentional tort against him when it directed him to apply, without any protective gear, extremely toxic chemicals to tarps covering cocoa beans. We have jurisdiction under 9 U.S.C. § 16. We will reverse, given that the terms of the Arbitration Agreement explicitly state that it applies to "all claims," including "torts." App. 30.

I.

Michael Steigerwalt is an employee of the pest control business Terminix. When he began work at Terminix, Steigerwalt signed an arbitration agreement. Paragraphs one and five of the agreement read as follows:

1. **Agreement to Arbitrate All Employment Disputes.** Private Arbitration is the referral of a dispute to an impartial third party, instead of a court or jury, for a final and binding decision. Any dispute arising out of Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration administered by the American Arbitration Association under its National Rules for the Resolution of Employment Disputes, or as mutually agreed . . . .

5. **Arbitrable Claims.** The parties understand that, except as otherwise provided by law, this Agreement applies to all claims, including, but by no means limited to, claims for breach of any contract (express or implied), discrimination, torts, and/or claims based upon federal, state or local ordinance, statute, regulation, contractual provision, or any other law.

Id.

Steigerwalt alleges that he was directed to perform a fumigation job on May 13, 2004 that involved placing tarps over cocoa beans and gassing the tarps with methyl bromide, an extremely toxic bug killer with "well-known, extreme inhalation hazards."

2

App. 9. Terminix concedes that employees must wear respirators and/or self-contained breathing apparatuses when using methyl bromide. Steigerwalt contends he was not provided with any protective equipment, and that he inhaled the toxin. He alleges that this inhalation of methyl bromide caused him to enter a coma for over two weeks, and that he suffered permanent brain damage including "severe neurocognative [sic] defects, neurological injuries, urologic injuries, including sexual dysfunction, decreased strength of all extremities, speech difficulties, walking difficulties, abnormal gait as well as other injuries to his nerves and nervous system . . . ." App. 12.

Steigerwalt presented evidence that his direct supervisor, Tony Simone, had requested "air pacs" prior to the incident, but that his request was denied. App. 10. According to Simone's testimony, a Terminix official told him that respirators were too expensive, stating that "$136 per month for five years was too much to spend." Id.

Steigerwalt brought suit against Terminix on several theories, alleging inter alia that he was harmed by Terminix's intentional conduct. Terminix moved to stay litigation and compel arbitration, and also moved to dismiss. The District Court granted Teminix's motion to dismiss "as to all claims based on Terminix's alleged non-intentional conduct"—which were barred by the Worker's Compensation law—but denied the motion to stay litigation and compel arbitration, determining that the parties had not intended for intentional wrongs of the kind alleged to fall within the scope of the arbitration agreement. App. 51. Terminix filed this interlocutory appeal.

## II.

3

Terminix contends that the District Court erred in determining that the alleged intentional tort falls outside the scope of the arbitration agreement. We "exercise plenary review over legal questions concerning the applicability and scope of an arbitration agreement." United States v. Barrack, 447 F.3d 207, 209 (3d Cir. 2006).

In reaching its conclusion, the District Court focused on paragraph one of the arbitration agreement, particularly its title—"Agreement to Arbitrate All Employment Disputes"—and its statement that "[a]ny dispute arising out of Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration . . . ." App. 30. The District Court employed the principle of ejusdem generis—"the meaning of a general term in a contract is limited by accompanying specific illustrations,"—to interpret the scope of the "Employment Disputes" addressed by the contract. App. 47 (quoting 5-24 Corbin on Contracts § 24.28), 48. Looking to the specific illustrations, "termination of employment" and "all statutory claims," the District Court essentially held that only those claims must be submitted to arbitration. App. 48. The District Court also employed the doctrine of contra proferentum—"[w]here two reasonable meanings are possible, the Court should interpret the contract against the draftsman"—to justify its reading, which disadvantaged contract author Terminix. App. 49. Finally, the District Court noted that the Arbitration Agreement expressly incorporated the AAA's "National Rules for the Resolution of Employment Disputes," which it believed centered around "workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color,

4

religion, sex, national origin, age, and disability." App. 49-50. The District Court concluded that Steigerwalt's allegations did not fit well with this list, and so "[i]nterpreting the parties' Agreement to include Steigerwalt's claims would require application of a set of rules not designed for his claims." App. 50.

Although the interpretive canons the District Court employed are well established, the proper starting point is the plain meaning of the Arbitration Agreement. Not all principles of interpretation are created equal; the plain meaning rule should always come first. See Watt v. Alaska, 451 U.S. 259, 266 (1981) (noting that, although the plain-meaning rule is not absolute, "the words used, even in their literal sense, are the primary, and ordinarily most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else"). Other interpretive principles need be employed only if the Agreement's plain meaning cannot be determined.[1]

In this case, any ambiguity as to the scope of the Arbitration Agreement is dispelled by paragraph five, which addresses the scope of "Arbitrable Claims." App. 30. The Agreement's scope is broad, and comfortably includes Steigerwalt's allegations; the Arbitration Agreement quite simply applies to "all claims." Id. The statement that the Agreement applies to "all claims" is followed by certain specific illustrations, but these illustrations are not meant to be limiting; the Arbitration Agreement states that its scope is

---

[1] If the plain meaning is not clear as to the parties' intent to arbitrate, a court should consider interpretive canons bearing in mind the presumption in favor of arbitration. See AT&T Tech., Inc. v. Commc'n Workers of Am., 475 U.S. 643, 650 (1986).

"by no means limited to" listed claims. Id.

To further clarify the situation, paragraph five's list of claims governed by the agreement specifically includes "torts." Id. Steigerwalt would have us view intentional torts as a special category of action that does not fit within "torts," but this asks us to warp the Agreement in his favor. The phrase "intentional tort" quite clearly refers to a category of torts; the adjective "intentional" limits the phrase so that it refers only to certain torts. Id. As if this were not enough, some of the first torts recognized at common law were intentional torts, and so the suggestion that "intentional torts" somehow do not qualify as torts is baseless. See W. Keeton et al., Prosser and Keeton on Law of Torts Ch. 1 § 6, 30-31 (5th ed. 1984). Steigerwalt's claim falls neatly within the scope of the Arbitration Agreement.

III.

Steigerwalt's attempts to push aside the text of the Agreement fail. He cites Fuller v. Guthrie, 565 F.2d 259, 261 (2d Cir. 1977), for the proposition that "unexpected tortious behavior" should fall outside the scope of arbitration agreement, but the case offers him scant support. The agreement in Fuller did not specifically include tort claims, as does the Arbitration Agreement. See id. at 260. Furthermore, the conduct at issue in Fuller—Arlo Guthrie's alleged slander of a concert organizer from the stage—fell outside the scope of the agreement in that case; he was hired to perform music, not to rant against the party that hired him. See id. at 260. In the case before us, on the other hand, Terminix gave Steigerwalt orders to perform an employment-related task. Although an egregious safety

6

violation may have been involved, the basic activity was pest reduction—the core task for which Terminix hired Steigerwalt.

Steigerwalt is no more successful with his argument that public policy bars enforcement of the Arbitration Agreement. Steigerwalt is correct that some contracts are void as against public policy. See Town of Newton v. Rumery, 480 U.S. 386, 392 (1987) ("[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement."). The contract at issue here, however, is not such a contract.

To succeed with his public policy argument, Steigerwalt would have to show the existence of a public policy, and then demonstrate that the Agreement violates it. He proposes that there is a "public policy ensuring that employers protect the safety of their employees," and that this policy is manifest in the Occupational Safety and Health Act. Appellee Br. 18; 29 U.S.C. § 651 et seq. He also suggests that the Workers' Compensation law, which does not bar actions for intentional wrongs, evinces a desire to allow litigation in such cases.[2] While such a public policy may exist, Steigerwalt offers no evidence that the Arbitration Agreement violates it. The Arbitration Agreement does not

---

[2] Steigerwalt references both state and federal law. The interpretation of arbitration agreements generally is regulated by federal law—specifically, the Federal Arbitration Act. See China Minmetals Materials Imp. & Export Co. v. ChiMei Corp., 334 F.3d 274, 290 (3d Cir. 2003). On the other hand, contract law is a creature of state law, and courts frequently have turned to state law for insight on particular principles of contract interpretation in the context of arbitration agreements. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

state that Terminix will not give workers respirators, or that workers may not complain about or be compensated for safety or health violations. Instead, it merely says such complaints must go to arbitration.

Underlying Steigerwalt's public policy argument may be the belief that he would receive more favorable, and perhaps fairer, treatment in court than he will in arbitration. Whether or not this is empirically true, the Supreme Court long ago declared that we are "past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals" should be allowed to undercut the Federal Arbitration Act's promotion of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-627 (1985). As a result, Steigerwalt's public policy argument founders.

******

The judgment of the District Court will be reversed.

———