NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4329-12T3

SERGIO RODRIGUEZ,

      Plaintiff-Appellant,

v.

RAYMOURS FURNITURE COMPANY, INC.,
a corporation, t/a RAYMOUR &
FLANIGAN,

      Defendant-Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 19, 2014**
>
> **APPELLATE DIVISION**

Argued March 18, 2014 — Decided June 19, 2014

Before Judges Messano, Rothstadt and Lisa.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1922-11.

Alan L. Krumholz argued the cause for appellant (Krumholz Dillon, P.A., attorneys; Mr. Krumholz, on the briefs).

Edward T. Groh argued the cause for respondent.

The opinion of the court was delivered by

LISA, J.A.D. (retired and temporarily assigned on recall).

The primary issue in this appeal is whether a contractual provision, contained in an employment application, by which the employee waives the two-year statute of limitations applicable to claims against the employer and shortens the period for such

claims to six months, should be enforceable. The trial court rejected the employee's unconscionability argument. The court found that the provision was clear in its terms, was conspicuously placed in the application form, and was reasonable and not contrary to any public policy. Therefore, the court concluded that the provision was enforceable. In a secondary argument, plaintiff contended that a second application form he completed, in conjunction with a promotion several years after his initial hire, which did not contain the shortened limitation period, constituted a novation and voided the initial contract. The court rejected this argument, noting that a novation is never presumed and finding nothing in the second application or in the circumstances of its completion to suggest any intent to void the provisions of the initial contract.

Because plaintiff filed his complaint nine months after his alleged wrongful termination by defendant, the court granted defendant's summary judgment motion and dismissed the complaint as time-barred. On appeal, plaintiff makes the same arguments before us as he made in the trial court. We agree with the trial court's analysis and conclusions, and we affirm.

I.

In August 2007, plaintiff approached defendant, a retail furniture company, seeking employment. The customer delivery

manager gave plaintiff an application form, which he was asked to complete and return. Plaintiff took the form home with him. The form was written completely in the English language. Plaintiff was born in 1971 in Argentina and, after obtaining an eighth-grade education there,[1] he came to the United States in 1987 at about age sixteen. Plaintiff contends that his ability to read or speak English is limited, although he had been living in this country for twenty years at the time of this application process.

Plaintiff completed the application form at home with the assistance of a close friend who was fluent in English and who translated the application from English to Spanish. According to plaintiff, his friend translated "[o]nly the places where I had to fill out." Plaintiff acknowledged that as his friend was assisting him he had no questions about the application. The next day, plaintiff returned the completed and signed form to defendant, handing it to the same person from whom he had received it. Plaintiff acknowledged that when he returned the form he did not have any questions about it.

The application form is two pages in length. Toward the bottom of the second page, immediately above the signature line, there is an "Applicant's Statement" in the following form:

---

[1] Plaintiff received a seventh-grade education, which is equivalent to an eighth-grade education in the United States.

**Applicant's Statement — READ CAREFULLY BEFORE SIGNING - IF YOU ARE HIRED, THE FOLLOWING BECOMES PART OF YOUR OFFICIAL EMPLOYMENT RECORD AND PERSONNEL FILE.**

I understand this employment application is not a promise of an offer of employment. I further understand that should I receive and accept an offer of employment, my employment does not constitute any form of contract, implied or expressed, and such employment will be terminable at will either by myself or Raymour & Flanigan upon notice of one party to the other. My continued employment would be dependent on satisfactory performance and continued need for my services as determined by Raymour & Flanigan.

I authorize investigation of all statements contained in this application. I understand that misrepresentation or omission of facts called for are grounds for a refusal to offer employment or a cause of dismissal if hired.

I AGREE THAT ANY CLAIM OR LAWSUIT RELATING TO MY SERVICE WITH RAYMOUR & FLANIGAN MUST BE FILED NO MORE THAN SIX (6) MONTHS AFTER THE DATE OF THE EMPLOYMENT ACTION THAT IS THE SUBJECT OF THE CLAIM OR LAWSUIT. I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.

I WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, OR RELATING TO, MY EMPLOYMENT WITH RAYMOUR & FLANIGAN, INCLUDING CLAIMS OF WRONGFUL OR RETALIATORY DISCIPLINE OR DISCHARGE; CLAIMS OF AGE, SEXUAL, SEXUAL ORIENTATION, RELIGIOUS, PREGNANCY OR RACIAL DISCRIMINATION; CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT, TITLE IX, AMERICANS WITH DISABILITIES ACT, AGE DISCRIMINATION IN EMPLOYMENT ACT, EMPLOYEE RETIREMENT INCOME SECURITY ACT,

A-4329-12T3

> FAIR LABOR STANDARDS ACT, AND ALL OTHER
> APPLICABLE NON-DISCRIMINATION, EMPLOYMENT OR
> WAGE AND HOUR STATUTES.

Plaintiff affixed his signature and inserted the date immediately below this statement. As depicted above, the prefatory language is in bold-faced large print, and the final two paragraphs, containing the shortened limitation period and jury trial waiver, are completely capitalized.

About one week after submitting the application, a representative of defendant contacted plaintiff and asked him to submit to a drug screen. Plaintiff successfully completed it and was hired as a helper[2] in mid-September 2007. The two-page application form was the only document plaintiff completed in connection with his hiring.

In 2010, defendant promoted plaintiff to the position of driver,[3] in which he would be the leader of a team making furniture deliveries. Plaintiff acknowledged in his deposition that in the new position he would be responsible for the team's performance, he would be required to read the delivery manifests, which were written in English, and he would need to communicate with customers primarily in English.

---

[2] Plaintiff's official title was "Customer Delivery Assistant."

[3] The precise dates of plaintiff's application for the new position, of his required road test and drug screening, and the effective date of the promotion are unclear from the record.

The driver's application form consists of four pages. It requires the applicant to provide personal information, employment history, and information regarding driving experience and driving record. Plaintiff filled in the relevant information and signed the form. This form does not contain any provisions shortening the period during which an action against the employer could be brought or waiving a jury trial.

On April 5, 2010, while delivering furniture to a customer's home, plaintiff injured his knee. He was diagnosed with a torn meniscus, necessitating a temporary absence from work. The injury was surgically repaired on July 21, 2010. Plaintiff was permitted to return to light-duty work on September 14, 2010, and then to unrestricted work on September 28, 2010.

Three days later, on October 1, 2010, defendant instituted a company-wide reduction in force (RIF), laying off a total of 102 workers, including plaintiff. According to defendant, plaintiff was selected for the RIF because of sub-standard job performance. According to plaintiff, in the complaint he filed on July 5, 2011, he was terminated in retaliation for having filed a workers' compensation claim and was discriminated against based upon disability, in violation of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49.

At the close of discovery, defendant moved for summary judgment on various grounds, including that plaintiff's complaint was time-barred. Because the trial court agreed with that contention, it did not reach any of the other bases for summary judgment.

In ruling on the motion, the court concluded that the waiver provision in the initial application "is clear" and "is clearly brought to the attention of anybody reading the document because of the capital letters and large print." Citing <u>Mirra v. Holland America Line</u>, 331 <u>N.J. Super.</u> 86 (App. Div. 2000), the court stated that parties can validly enter into agreements to limit the time within which lawsuits can be brought "provided that it's a reasonable limitation, [and] does not violate public policy." The court found no basis for a finding "that six months is against any public policy or is an unreasonable time within which to bring a claim about which one would know immediately upon the event happening."

The court also rejected plaintiff's novation argument regarding the driver's application. Citing <u>Sixteenth Ward Building and Loan Association v. Reliable Loan</u>, 125 <u>N.J. Eq.</u> 340 (E. & A. 1939), the court noted the well-settled principle that a novation is never presumed. The court then concluded that there was nothing in either of the agreements and no evidence in

the record to support a conclusion that the second application was intended as a novation.

Accordingly, summary judgment was entered dismissing plaintiff's complaint. This appeal followed.

## II.

### A.

The standard of review by which we must analyze the issues before us is well-settled. Trial courts must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." R. 4:46-2(c). The appropriate inquiry must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 533 (1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)). The court must review the evidence presented "in the light most favorable to the non-moving party." Id. at 540.

Our review of summary judgment orders is de novo, using the same standard applied by trial courts. W.J.A. v. D.A., 210 N.J. 229, 237-38 (2012). We accord no special deference to the trial court's assessment of the record, because the trial court's decision amounts to a ruling on a question of law rather than a determination of the credibility of testimony rendered in court. See Manalapan Realty, L.P. v. Manalapan Twp. Comm., 140 N.J. 366, 378 (1995). Further, a trial court's interpretation of the meaning of a contract is also a matter of law, subject to de novo review. Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998).

### B.

Plaintiff contends that the shortened limitation period in the initial application is unconscionable and therefore unenforceable. Generally, "[a] contract is unenforceable if its terms are manifestly unfair or oppressive and are dictated by a dominant party." Howard v. Diolosa, 241 N.J. Super. 222, 230 (App. Div.) (citing Kuzmiac v. Brookchester, 33 N.J. Super. 575 (App. Div. 1955)), certif. denied, 122 N.J. 414 (1990). A party raising a claim of unconscionability has the burden of showing "some over-reaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the terms of the contract that no reasonable [person] not acting

under compulsion or out of necessity would accept them." Rotwein v. Gen. Accident Grp., 103 N.J. Super. 406, 418 (Law Div. 1968). In the waiver context, "a party's waiver of statutory rights 'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001) (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140 (1978)).

Unconscionability analysis requires consideration of two factors — procedural unconscionability and substantive uncon-scionability. The former arises out of defects in the process by which the contract was formed, and "'can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 15 (2006) (quoting Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564-66 (Ch. Div. 2002)), cert. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 2d 763 (2007). The latter "generally involves harsh or unfair one-sided terms." Ibid. Stated differently, substantive unconscionability "simply suggests the exchange of obligations so one-sided as to shock

the court's conscience." Sitogum Holdings, supra, 352 N.J. Super. at 565 (citations omitted).

Generally, a "sliding scale" analysis is utilized in tandem, considering the respective degrees of procedural and substantive unconscionability found to exist. Muhammad, supra, 189 N.J. at 16 n.3 (citing Sitogum Holdings, supra, 352 N.J. Super. at 565-66). Under this approach, overall unconscionability may be found if there is a gross level in one category but only a lesser level in the other. Sitogum Holdings, supra, 352 N.J. Super. at 565-66.

In support of his unconscionability argument, plaintiff first relies on the contention that the six-month limitation period is embodied in a contract of adhesion. Although he can point to no specific record evidence to support that this was a take-it-or-leave-it form contract in which he had no ability to negotiate any terms, plaintiff argues that it is obvious that prospective employees for low-level jobs such as a furniture delivery helper were indeed in that position.

Defendant argues that because plaintiff never asked any questions about the application or attempted to negotiate the disputed term (or any terms) he has failed to establish that the terms were non-negotiable. Defendant relies on a case in which a highly educated individual, experienced in the field of human

resources, applied for the position of Benefits Administrator and, in her discussions with the prospective employer during the application process, did not attempt to alter any terms of the employment application form and provided no evidence that the employer would have refused to consider her if she did not agree to the arbitration provision contained in the application form. Martindale v. Sandvik, Inc., 173 N.J. 76, 91 (2002). On that basis, the Court was "not persuaded that [the] plaintiff was forced to sign an inflexible contract of adhesion in the circumstances of her completion of the Application for Employment." Ibid. Notwithstanding that determination, the Court concluded that the result would be the same even if it was a contract of adhesion in light of the facts of the case. Ibid.

We find defendant's argument unpersuasive. The case before us is more akin to the circumstances in Muhammad, supra, 189 N.J. at 18-19, in which the court recognized that "the gross disparity in the relative bargaining positions of the parties [was] self-evident from the nature of the payday loan contract between a consumer and a financial entity." This led the court to conclude that the agreement was "clearly a contract of adhesion." Id. at 18. The circumstances in this case likewise reflect a self-evident non-negotiable employment application form. We accordingly deem this a contract of adhesion.

Plaintiff argues that because this was a contract of adhesion it was per se unenforceable against the adhering party. This argument is unsupported by any authority. Indeed, "[t]he determination that a contract is one of adhesion . . . 'is the beginning, not the end, of the inquiry' into whether a contract, or any specific term therein, should be deemed unenforceable based on policy considerations." Muhammad, supra, 189 N.J. at 15 (quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 354, cert. denied, 506 U.S. 871, 113 S. Ct. 203, 121 L. Ed. 2d 145 (1992)).

Plaintiff next argues that because the courts of this State have determined that the appropriate statute of limitations for LAD claims and for common law claims of retaliatory discharge for filing a workers' compensation claim is two years, see Montells v. Haynes, 133 N.J. 282, 286 (1993); Labree v. Mobile Oil Corp., 300 N.J. Super. 234, 242 (App. Div. 1997), the two year limitation period provided by N.J.S.A. 2A:14-2 cannot be modified by agreement. Well-settled law is to the contrary. Long ago, the United States Supreme court held that

> it is well established that, in the absence
> of a controlling statute to the contrary, a
> provision in a contract may validly limit,
> between the parties, the time for bringing
> an action on such a contract to a period
> less than that prescribed in the general
> statute of limitations, provided that the

> shorter period itself shall be a reasonable period.
>
> [Order of United Comm. Travelers of Am. v. Wolfe, 331 U.S. 586, 608, 67 S. Ct. 1355, 1365, 91 L. Ed. 1687, 1700 (1947).]

New Jersey courts have followed this principle. See, e.g., Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co., 145 N.J. 345, 354-63 (1996) (upholding a one-year limitation period in a surety bond, which modified the six-year limitation period provided by statute); Mirra, supra, 331 N.J. Super. at 90 (rejecting the plaintiff's argument that the parties could not contract for a limited filing period under the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -195, because the limitation was reasonable, and neither the CFA nor New Jersey's general statute of limitations restricted the ability of the parties to shorten the period in which claims could be filed); A.J. Tenwood Assocs. v. Orange Senior Citizens Hous. Co., 200 N.J. Super. 515, 523-25 (App. Div.) (holding that a one-year limitation period in a construction contract barred the plaintiff from bringing a claim, notwithstanding the ordinary six-year statutory limitation for such actions under N.J.S.A. 2A:14-1), certif. denied, 101 N.J. 325 (1985); see also Weinroth v. N.J. Mfrs. Ass'n Fire Ins. Co., 117 N.J.L. 436, 438-39 (E. & A. 1936); Ribeira & Lourenco Concrete Constr., Inc. v. Jackson Health Care Assocs., 231 N.J. Super. 16, 22-23 (App. Div.

1989); <u>Staehle v. Am. Employers' Ins. Co.</u>, 103 <u>N.J. Super.</u> 152, 154 (App. Div. 1968).

Plaintiff refines his argument on this point, urging us to judicially impose a prohibition on agreements shortening limitation periods specifically in employment contracts. He points to various legislative enactments in New Jersey, such as the LAD, the Conscientious Employee Protection Act (CEPA), <u>N.J.S.A.</u> 34:19-1 to -14, and the Family Leave Act, <u>N.J.S.A.</u> 34:11B-1 to -16, as evidence of a strong public policy to protect workers' rights.

This argument asks us to intrude upon the prerogative of the Legislature. None of these enactments impose a ban on contractually reducing a limitation period. The Legislature is presumably aware of the long-established case law allowing contractual reductions that are reasonable and not contrary to public policy, where not statutorily prohibited. Yet, it has not acted.

Our role is to determine whether, considering the factual circumstances in a particular case, the shortened limitation period is reasonable and does not contravene public policy. Indeed, our Legislature has set different limitation periods for different employee actions. <u>See, e.q.</u>, the one-year statute of limitations for CEPA claims, <u>N.J.S.A.</u> 34:19-5, as opposed to the

two-year limitation period for LAD lawsuits. And, as we will further discuss, under a choice-of-remedies provision in the LAD, N.J.S.A. 10:5-13, a party claiming discrimination in violation of the LAD may choose to pursue an administrative remedy rather than filing a lawsuit, in which case he or she must file a claim with the Division on Civil Rights (DCR) within 180 days. Similarly, the Legislature has set a limitation period under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -43, of six months from the alleged unfair practice. N.J.S.A. 34:13A-5.4(c).

These limitation periods are traditionally legislative determinations. The judicial role involves such functions as interpretation of which statutory limitation provision applies in cases of ambiguity, the development and application of principles and doctrines to avoid injustices, such as equitable tolling, the discovery rule, estoppel, and the continuing violation doctrine, as well as a determination of whether any contractual modification is reasonable and not contrary to public policy.

We therefore decline plaintiff's invitation to impose a judicial ban on the shortening of limitation periods for claims by workers against their employers. Plaintiff's arguments in this regard are better directed to the Legislature, which could

consider, with input from all stakeholders and affected parties, the advisability of such legislation, and which could consider alternatives, such as specifying certain types of actions in which to impose a ban or partial ban on modifications of the statutory time frames, the procedures required to effectuate any such contractual modifications, and other related issues. Our role is to decide the case before us and determine whether an injustice has been caused by an allegedly unconscionable contract.

Plaintiff further argues that because the statutory right being waived eliminates any forum in which to seek a remedy if the contractual limitation period is missed, this case is materially distinguishable from those allowing waivers of jury trials and requiring arbitration proceedings in lieu of actions in the courts. In the latter circumstances, plaintiff argues, although a worker is limited as to the forum, he or she is nevertheless left with a forum in which a fair adjudication can be made.

This argument presupposes that an individual signing an agreement is not aware of what is in it and therefore would not know when his or her filing deadline would occur. We reject this premise. An individual who signs an agreement is assumed to have read it and understood its legal effect. Rudbart, supra,

17                                                                    A-4329-12T3

127 <u>N.J.</u> at 352-53 (citing <u>Fivey v. Penn R.R.</u>, 67 <u>N.J.L.</u> 627, 632 (E. & A. 1902)).  This principle applies even if a language barrier is asserted.  <u>See</u> <u>Morales v. Sun Constructors, Inc.</u>, 541 <u>F.</u>3d 218, 221-23 (3d Cir. 2008) (rejecting the plaintiff's contention that he should not be bound by an arbitration agreement because it was drafted in English and he spoke only Spanish).

Plaintiff also contends that allowing a six-month limitation period for a LAD lawsuit would tend to have an adverse impact on the alternate route legislatively allowed in the LAD by <u>N.J.S.A.</u> 10:5-13.  Under that section, an aggrieved party can make a choice to pursue a civil action in court or proceed by way of seeking a remedy in an administrative proceeding in the DCR.  The LAD also contains an exclusivity provision, which provides that an administrative proceeding, once commenced and while pending, shall be exclusive, and the final determination in that proceeding shall exclude any other action based on the same grievance of the individual concerned. <u>N.J.S.A.</u> 10:5-27.

Plaintiff argues that an individual who files a discrimination complaint with the DCR within the 180 day statutory limitation period might be lulled into thinking there is no hurry to see how the investigation and discussions in that

proceeding are progressing, because, if later deemed unsatisfactory, he or she can always withdraw the claim in the DCR action and have it dismissed, after which he or she can proceed with a lawsuit. Doing so might well be within two years, but not within six months of the discriminatory act complained of.

We reject this argument. Again, it assumes that a claimant <u>is</u> aware of the two-year statutory limitation period, but <u>is not</u> aware of the shortened period to which he or she contractually agreed. The parties are charged with knowledge of the law and with knowledge of contracts into which they have entered. Further, we do not see how the statutory scheme allowing the election of remedies would be impaired. It is the claimant's choice whether to pursue either the more streamlined and less expensive administrative route, or a civil lawsuit.

Plaintiff also contends that language in the "Applicant's Statement," which states that, if employed, plaintiff's "employment does not constitute any form of contract, implied or expressed," either creates a fatal ambiguity in the contract or should serve to estop defendant from attempting to enforce the provision limiting the time within which a claim must be filed. According to plaintiff, defendant cannot assert a contractual right with respect to the shortened limitation provision while

at the same time denying, within the text of the employment application, that the document constitutes a contract.

We find this argument unpersuasive. The text creates no ambiguity. It is clear from the full text of the sentence in which the "does not constitute any form of contract" language appears that the language pertains only to the fact that, if hired, plaintiff's "employment will be terminable at will either by [him] or [defendant] upon notice of one party to the other." These are two distinct terms, each dealing with a different subject. One defines the applicant's at-will status if hired. The other addresses the time frame within which the applicant, if hired, must initiate claims or lawsuits against his employer.

We now address the relevant unconscionability factors. Contracts of adhesion "invariably evidence some characteristics of procedural unconscionability," and therefore "require[] a careful fact-sensitive examination into substantive unconscionability." Muhammad, supra, 189 N.J. at 16. In Muhammad, the Court further noted that where a contract of adhesion involves "overwhelming" procedural unconscionability, those procedural factors must be analyzed further in a "sliding scale" analysis along with the degree of any substantive unconscionability. Id. at 16 n.3.

The level of procedural unconscionability in this case is by no means overwhelming. The disputed contract provision was not buried in a large volume of documents. It was contained in a two-page application and set forth very conspicuously in bold oversized print and capital lettering, just above the applicant's signature line. The terminology was clear and uncomplicated. Plaintiff was put under no pressure to complete and sign the application quickly. Indeed, he was permitted to take it home and complete it at his leisure, which he did, with the assistance of a friend who was more fluent than he in the English language.

In the context of arbitration provisions in employment contracts, the United States Supreme Court has held that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that [such] agreements are never enforceable in the employment context." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33, 111 S. Ct. 1647, 1655, 114 L. Ed. 2d 26, 41 (1991). Referring to Gilmer, we have held that "the Supreme Court obviously contemplated avoidance of the arbitration clause only upon circumstances substantially more egregious than the ordinary economic pressure faced by every employee who needs the job." Young v. Prudential Ins. Co. of Am., Inc., 297 N.J. Super. 605, 621 (App. Div. 1997). And, our Supreme Court has observed:

Virtually every court that has considered the adhesive effect of arbitration provisions in employment applications or employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and employee. See generally, Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 17 (1st Cir. 1999) (holding that absent showing of fraud or oppressive conduct, arbitration of plaintiff's age and gender discrimination claims pursuant to arbitration provision contained in Form U-4 was permissible); Seus v. John Nuveen & Co., 146 F.3d 175, 184 (3d Cir. 1998), cert. denied, 525 U.S. 1139, 119 S. Ct. 1028, 143 L. Ed. 2d 38 (1999) (rejecting argument that disparity in bargaining power resulted in contract of adhesion); Koveleskie [v. SBC Capital Mkts., Inc., 167 F.3d 361, 367 (7th Cir. 1999)] (upholding employee's agreement to arbitrate Title VII claim, noting that state law does not void contracts based on unequal bargaining power or contracts made on "take-it-or-leave-it" basis); Nur v. KFC, USA, Inc., 142 F. Supp. 2d 48, 51-52 (D.D.C. 2001) (rejecting argument that arbitration agreement contained in employment application of restaurant's assistant manager was unenforceable contract of adhesion, where agreement was not unduly burdensome, did not favor one party over other, and provided that American Arbitration Association and [Federal Arbitration Act] rules apply to arbitration proceeding).

[Martindale, supra, 173 N.J. at 90-91.]

Overall, the level of procedural unconscionability attendant to the formation of this contract was minimal. Therefore, the focus must be on whether the agreement is

substantively unconscionable. Because this is a contract of adhesion, the four factors identified in Rudbart must be considered, namely, "[(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the degree of economic compulsion motivating the 'adhering' party, and [(4)] the public interests affected by the contract." Muhammad, supra, 189 N.J. at 15-16 (quoting Rudbart, supra, 127 N.J. at 356). Weighing and balancing these factors leads us to the conclusion that the six-month limitation period is not substantively unconscionable.

As we have pointed out, in the absence of a statute to the contrary, parties are free to contractually limit the time within which an action may be brought, as long as the contractual time is reasonable and does not violate public policy. Although no New Jersey court has addressed this issue in the employment context in a published opinion, courts that have considered the issue have given widespread approval to shortened periods comparable to the one in this case. Indeed, the New York intermediate appellate court has approved the very same waiver provision that is involved in this case, which was contained in defendant's employment application completed by an employee in New York. Hunt v. Raymour & Flanigan, 963 N.Y.S.2d 722, 723-24 (App. Div. 2013).

In cases decided by various federal and state courts, a distinction is made between federal claims that are subject to the exclusive jurisdiction and exhaustion of administrative remedies requirements through the United States Equal Employment Opportunity Commission (EEOC), and non-EEOC claims. "Congress created the EEOC and established an administrative procedure under Title VII in order to provide the EEOC with 'an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party [is] permitted to file a lawsuit.'" Lewis v. Harper Hosp., 241 F. Supp.2d 769, 771 (E.D. Mich. 2002) (quoting Occidental Life Ins. Co. of Cal. v. EEOC, 432 U.S. 355, 368, 97 S. Ct. 2447, 2455, 53 L. Ed. 2d 402, 412 (1977)). A claimant must first file a charge with the EEOC, which then investigates the charge to determine whether there is reasonable cause to believe that the charge is true. Id. at 771-72. The EEOC is authorized to bring a civil action against the responsible party or, if it finds reasonable cause but chooses not to bring an action, it issues a "right to sue" letter authorizing the individual claimant to sue. Ibid. If no reasonable cause determination is made within 180 days after filing with the EEOC, the claimant may request a right to sue letter, and upon its issuance, file suit directly. Id. at 772. While the case is pending in the EEOC, and during the 180 day

24

period, at the least, the EEOC has exclusive jurisdiction, and the individual is not authorized to file suit in his or her own behalf. Ibid.

Therefore, for federal claims which are subject to initial filing with the EEOC, courts have held that a six-month contractual limitation period to file suit is unenforceable because it would have the effect of abrogating a claimant's ability to bring a claim and would therefore be contrary to the public policy established for federal claims subject to EEOC jurisdiction. Ibid.; see also Salisbury v. Art Van Furniture, 938 F. Supp. 435, 437-38 (W.D. Mich. 1996) ("With respect to the [Americans with Disabilities Act, (ADA)] claim, the contractual limitation certainly effected a 'practical abrogation' of the right to file an ADA claim and is, therefore unreasonable[.]"); Scott v. Guardsmark Sec., 874 F. Supp. 117, 121 (D.S.C. 1995) (rejecting a six-month contractual limitation period in an ADA case because it was "abhorrent to public policy," "required an employee to waive his or her federal protections," and "reduce[d] the time limits to assert a federal cause of action").

However, where administrative exhaustion requirements are not present, as in the case before us, courts have upheld six-month contractual provisions in employment contracts, deeming them reasonable. See, e.g., Thurman v. DaimlerChrysler, Inc.,

397 <u>F.</u>3d 352, 358-59 (6th Cir. 2004) (affirming dismissal of the plaintiff's state law claims and 42 <u>U.S.C.A.</u> §1981 claim based on six-month limitation provision in employment application); <u>Soltani v. W. & S. Life Ins. Co.</u>, 258 <u>F.</u>3d 1038, 1044 (9th Cir. 2001) (upholding six-month contractual limitation period to bar wrongful discharge claim); <u>Taylor v. W. & S. Life Ins. Co.</u>, 966 <u>F.</u>2d 1188, 1206 (7th Cir. 1992) (six-month contractual limitation period enforced as to non-EEOC claims); <u>Myers v. W. & S. Life Ins. Co.</u>, 849 <u>F.</u>2d 259 (6th Cir. 1988) (upholding the six-month limitation period in employment contract for plaintiff's disability discrimination claim based on state statute); <u>Ray v. FedEx Corporate Servs., Inc.</u>, 668 <u>F. Supp.</u>2d 1063, 1065-69 (W.D. Tenn. 2009) (six-month limitation period upheld with respect to the plaintiff's federal age discrimination claim); <u>Badgett v. Fed. Express Corp.</u>, 378 <u>F. Supp.</u>2d 613, 626 (M.D.N.C. 2005) (concluding that the plaintiff's state law claims and non-EEOC federal claims were subject to dismissal as time-bared under the six-month contractual limitation period agreed to by the parties); <u>Clark v. DaimlerChrysler Corp.</u>, 706 <u>N.W.</u>2d 471, 474 n.2 (Mich. App. 2005) (upholding six-month contract limitation period that barred plaintiff's age discrimination claim based on state statute for which the statutory limitation period was three years, and

commenting: "While we have much sympathy for the dissent's argument that there ought to be limitations on an employer's ability to contractually modify periods of limitations, especially in the civil rights context, we believe such limitations ought to be imposed by the Legislature, not the judiciary."), appeal denied, 713 N.W.2d 779 (2006); Lewis, supra, 241 F.Supp.2d at 769, 771-74 (E.D. Mich. 2002) (enforcing six-month limitation period in employment contract as to non-EEOC claims, but not as to EEOC claims); Timko v. Oakwood Custom Coating, Inc., 625 N.W.2d 101, 105-06 (Mich. App. 2001) (affirming summary judgment dismissing the plaintiff's age discrimination claim based on state law, holding that the contractual six-month limitation period was reasonable).

We agree with the reasoning and conclusions reached in these opinions. Plaintiff has cited no published opinion to the contrary. As we have pointed out, six months is the statutory time frame for filing an administrative claim for a LAD violation. Such a filing represents a choice of remedies under New Jersey's scheme. Because the Legislature has set six months for this alternative route, we are hard pressed to judicially declare that six months is an unreasonable, conscience-shocking time period in which a claimant must choose the other available route, a civil lawsuit. And, following the distinction we have

27                                                    A-4329-12T3

highlighted between federal claims subject to EEOC jurisdiction and exhaustion of those administrative remedies before a private suit can be filed, and other non-EEOC claims (such as the one before us) with no such prerequisite, we find nothing unreasonable or contrary to New Jersey's public policy about a six-month limitation for state law claims such as those brought by plaintiff in this case.

Applying the four Rudbart factors, we conclude, as to the first, that the subject matter of the contract in dispute, the shortened limitation period, is a valid and legitimate subject to be included in an employment contract, and has been judicially recognized as such. As to the second factor, although defendant was in a superior bargaining position, it did not hold a monopoly on jobs of the type for which plaintiff was applying. Plaintiff was under no compulsion to pursue the application if he was dissatisfied with any of the terms of employment, including the shortened limitation period. Rudbart, supra, 127 N.J. at 356-57. This analysis also applies to the third factor, the degree of economic compulsion motivating plaintiff. As we have pointed out, anyone who needs a job is under some level of economic compulsion, but plaintiff has presented no evidence to suggest that his circumstances were any

28

more egregious than those faced by any other applicant seeking employment.  Young, supra, 297 N.J. Super. at 621.

As to the fourth factor, the public interests affected by the contract, for the reasons we have stated, we find no adverse effect on public policy or public interests.  We recognize that New Jersey has a strong public policy, as evidenced by various statutory enactments protecting the rights of workers and prohibiting discrimination in the workplace.  That public policy is not harmed by a contractually agreed-upon shortened limitation provision within which a worker can make a claim against his or her employer if that shortened period is reasonable.  For the reasons we have discussed, six months is reasonable in the circumstances presented.  Accordingly, plaintiff's suit against defendant was time-barred by the six month provision.

C.

We summarily reject plaintiff's alternative argument that the application he filed for his promotion to driver constituted a novation that overrode and voided the initial application.  To constitute a novation, a new contact must exhibit a clear and definite intention on the part of all parties that its purpose is to supersede and eliminate a prior contact.  Sixteenth Ward Bldg. & Loan Ass'n, supra, 125 N.J. Eq. at 342-43.  A novation

is never presumed.  _Ibid._  The burden of proving a novation lies with the party alleging it.  _Id._ at 345.

Applying the _Brill_ standard, the motion record is devoid of any evidence that would support a "clear and definite" showing that the parties intended to extinguish the provisions of the initial application.  The initial application was for a new hire, specifying certain terms of employment if hired, including his or her at-will status and the shortened limitation period.  The second application was merely a means of obtaining further information from plaintiff relevant to the new position to which he was being promoted, a driver.  It sought information about his driving experience and driving record.  His employment with defendant was uninterrupted by this promotion.

Under these circumstances, the record is sufficiently "one-sided" that a reasonable fact-finder could not find by clear and definite evidence that both parties intended to create a new contract.  See _Brill_, _supra_, 142 _N.J._ at 529, 532.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION