**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3979-23

BLANCA ANAELY VILLEDA-
GRANADOS, JAIRON PENA,
individually as per quod claimant
and as guardian ad litem for minor
plaintiffs, BRIANNA PENA
VILLEDA, and ANGELYN
ROCIO PENA,

     Plaintiffs-Appellants,

v.

UBER TECHNOLOGIES, INC.,
RASIER/PORTIER, LLC, JOSE
LEON, and DUBLIN
MAINTENANCE, INC.,

     Defendants-Respondents,

and

HUMAIDI MASOUD,

     Defendant.

_____

Argued February 5, 2025 – Decided March 28, 2025

Before Judges Currier, Paganelli, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1019-23.

Amanda R. Freyer argued the cause for appellants (Stark & Stark, PC, attorneys; Bhaveen R. Jani, of counsel and on the briefs; Amanda R. Freyer, on the briefs).

Matthew D. Klayman (Morgan, Lewis & Bockius, LLP) argued the cause for respondents Uber Technologies, Inc. and Rasier/Portier, LLC.

Frank H. Reimers argued the cause for respondents Jose Leon and Dublin Maintenance, Inc. (Garrity, Graham, Murphy, Garofalo & Flinn, PC, attorneys; Frank H. Reimers, of counsel and on the brief).

PER CURIAM

In this matter, we consider whether plaintiff, Blanca Anaely Villeda Granados (Blanca),[1] who agreed to the Terms of Service (Terms) of an arbitration agreement while using the Uber app on her phone in Spanish, is bound by that agreement if the Terms section itself was in English. The pop-up notification advising Blanca to read the updated Terms, and the consent

_____

[1] Plaintiff Blanca Anaely Villeda Granados brings this complaint individually. Plaintiff Jairon Pena alleges per quod injuries and is the guardian ad litem for the minor plaintiffs Brianna Pena Villeda and Angelyn Rocio Pena. We refer to them collectively as plaintiffs.

2

A-3979-23

checkbox in which Blanca agreed to the Terms were in Spanish. However, the Terms, reached via a hyperlink in Spanish, were in English. Plaintiffs contend the arbitration agreement is both procedurally and substantively unconscionable.

Web-based consumer contracts, such as this arbitration agreement, are now prevalent in our society and our courts have long found them valid. See Wollen v. Gulf Stream Restoration & Cleaning, LLC, 468 N.J. Super. 483, 495 (App. Div. 2021). Clickwrap agreements[2] are also routinely enforced because the user has agreed they were put on notice of the terms, and they assented to them. See Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 288-89 (App. Div. 2023). Blanca downloaded the Uber app in Spanish. She was advised of the presence of the Terms in Spanish and she thereafter agreed to the Terms by clicking a consent box, also in Spanish. Guided by our courts' underlying principle of mutual assent that an individual who signs an agreement is assumed to have read it and understood its legal effect, we affirm the trial court's order compelling arbitration.

---

[2] "Clickwrap, 'click-through' or 'click-to-accept' as the name implies, requires 'a user consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction.'" Wollen, 468 N.J. Super. at 496 (quoting Skuse v. Pfizer Inc., 244 N.J. 30, 55 n.2 (2020)).

On April 21, 2021, Blanca used the Uber app on her cell phone to request a ride for herself and her two minor children. Defendant Humaidi Masoud was the Uber driver who responded to her request. While en route to the destination, Masoud was involved in an accident with defendant Jose Leon, who was operating a truck for defendant Dublin Maintenance Inc.[3]

Plaintiffs filed a complaint alleging all defendants were negligent and liable for damages as a result of the injuries sustained by Blanca and her two children in the car accident. Uber, Masoud, and Raiser[4] (Uber defendants) filed their answer, including the affirmative defense that the case was required to proceed in an arbitration forum. Thereafter, the Uber defendants moved to compel arbitration.

Uber is a technology company that develops and maintains digital multi-sided marketplace platforms. Included in this is the "Rides platform," in which approved drivers can connect with customers and obtain payment for transportation services via the app.

---

[3] Leon and Dublin Maintenance take no position regarding the enforceability of the arbitration agreement. They request only that this court continue the stay of the litigation against them in the Superior Court until the arbitration between plaintiffs and the Uber defendants has concluded.

[4] Defendant Raiser/Portier, LLC is a subsidiary of Uber, which operates a transportation network company in New Jersey.

A-3979-23

Uber's records reflect Blanca downloaded the Uber app in November 2016. The records further reveal that when Blanca used the app in March 2021, she was notified by Uber in bold lettering in Spanish that its Terms had been updated. The in-app notification stated, in Spanish, "**We encourage you to read our updated Terms in full**" and provided hyperlinks to the "Terms of Use" and a "Privacy Notice."

On the bottom of the notification is an acceptance confirmation checkbox that stated in Spanish, "**By checking the box, I have reviewed and agree to the Terms of Use and acknowledge the Privacy Notice.** I am at least 18 years of age." Blanca confirmed her acceptance of the Terms by clicking the checkbox on the same date. At the bottom of the pop-up screen was a large black button with "Confirm" written in white in Spanish. Blanca also checked this box.

When an Uber user clicks on the hyperlink, this notice appears:

> **IMPORTANT: PLEASE BE ADVISED THAT THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS BETWEEN YOU AND UBER CAN BE BROUGHT, INCLUDING THE ARBITRATION AGREEMENT (SEE SECTION 2 BELOW). PLEASE REVIEW THE ARBITRATION AGREEMENT BELOW CAREFULLY, AS IT REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION (AS DESCRIBED IN**

5

**SECTION 2 BELOW). BY ENTERING INTO THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION.**

The Terms include an arbitration clause which states, in part:

> By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement. . . .
>
> . . . .
>
> . . . [Y]ou and Uber agree that any dispute, claim or controversy in any way arising out of or relating to (i) these Terms and prior versions of these Terms, or the existence, breach, termination, enforcement, interpretation, scope, waiver, or validity thereof, (ii) your access to or use of the Services at any time, (iii) incidents or accidents resulting in personal injury that you allege occurred in connection with your use of the Services, whether the dispute, claim or controversy occurred or accrued before or after the date you agreed to the Terms, or (iv) your relationship with Uber, will be settled by binding arbitration between you and Uber, and not in a court of law. This Agreement survives after your relationship with Uber ends.
>
> You acknowledge and agree that you and Uber are each waiving the right to a trial by jury . . . .
>
> This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third-parties, including but not limited to your spouses,

6

A-3979-23

. . . [and] third-party beneficiaries . . . where their underlying claims are in relation to your use of the Services.

Additionally, the arbitration agreement included a delegation clause, which states:

> The parties agree that the arbitrator ("Arbitrator"), and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are applicable, unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel. If there is a dispute about whether this Arbitration Agreement can be enforced or applies to a dispute, you and Uber agree that the arbitrator will decide that issue.

An Uber employee, Alejandra O'Connor, certified that "[i]f an individual's iPhone language is set to Spanish in their personal phone settings, the Uber App will also be in Spanish on that iPhone, including the Terms. Moreover, any user, including . . . Blanca . . . may use their browser to translate the Terms to Spanish, if necessary." O'Connor also certified that Uber's database for Blanca's account indicated that Blanca clicked the confirmation checkbox for acceptance of Uber's Terms on March 23, 2021.

7

In opposing the motion to compel arbitration, Blanca certified her native language is Spanish, and she can only "read, speak, and understand Spanish." She stated she first downloaded the Uber app in 2016 and used it in Spanish. She did "not recall checking . . . any box" to accept the terms. In a second certification supplied in May 2024, Blanca stated the Terms and arbitration agreement "are still in English."

Plaintiffs contended that the arbitration agreement was inapplicable to the children's and Pena's per quod claim and asserted that the agreement was a contract of adhesion and unconscionable. Plaintiffs also sought discovery, arguing the limited documents provided by Uber were inconsistent and did not support the Uber defendants' arguments regarding notice of and mutual assent to the arbitration agreement.

On July 17, 2024, the trial court granted the Uber defendant's motion in a thorough, well-reasoned written statement of reasons and accompanying order. The trial court found the arbitration agreement was "an enforceable clickwrap agreement[,]" and the arbitration provision in the Terms was "clear." The court noted the Uber defendants certified that (1) the in-app updated Terms notification as well as the Terms themselves were in Spanish since Blanca had

A-3979-23

set up her Uber app in Spanish, and (2) Blanca checked the box confirming her acceptance to the Terms. Therefore,

> [t]here [was] no indication that [Blanca] did not understand any part of the app blocking pop up screen/click box [when] she was using the app prior to being able to secure or request a ride. There [wa]s no indication that [Blanca] was unable to use a translator app if she could not read any portion of the User Agreement/Terms of Use if it in fact was in English and not Spanish.

The trial court, citing Morales v. Sun Constructors, Inc., 541 F.3d 218, 222 (3d Cir. 2008), stated that absent a showing of fraud, "the fact that an [individual] cannot read, write, speak, or understand the English language is immaterial to whether an English language agreement the [individual] executes is enforceable." The court found Blanca was on notice of a change in the Terms, in her native language, and the Terms were clear and conspicuous.

The trial court also found the minor children's claims were subject to arbitration under Hojnowski v. Vans Skate Park, 187 N.J. 323 (2006), since an agreement to arbitrate is valid and enforceable against any tort claims asserted on a minor's behalf. In addition, the court reasoned since the minor children were in the vehicle with Blanca, they were subject to the Terms in the Uber agreement. Similarly, because a per quod claim is derivative of Blanca's

A-3979-23

personal injury claims, it must be joined with the primary claim in the action, rendering Pena's claim subject to an arbitration forum.

Finally, the trial court found the agreement was not unconscionable or a contract of adhesion as Blanca was not compelled to use the Uber app and "could have sought alternative methods of travel with other ride share companies or taxi companies if she disagreed with or objected to the Terms of Use."

On appeal, plaintiffs contend the court erred in finding the arbitration agreement was not unconscionable and in finding Blanca agreed to Uber's Terms.

We review a trial court's determination of a motion to compel arbitration de novo because whether an arbitration agreement is enforceable presents a question of law. Skuse, 244 N.J. at 46.

Under the Federal Arbitration Act,

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .
>
> [9 U.S.C. § 2.]

Our legislature has enacted a similar statute. See N.J.S.A. 2A:23B-6(a).

<span>A-3979-23</span>

The United States Supreme Court and our courts have adopted a liberal policy favoring arbitration. Skuse, 244 N.J. at 46.

We begin with plaintiffs' contention that the arbitration agreement was unconscionable because it was not presented to Blanca in Spanish. We note preliminarily that the arbitration agreement included a delegation clause that clearly and unambiguously delegated authority to the arbitrator to determine questions of arbitrability, including whether the agreement was unconscionable. Plaintiffs did not specifically challenge the delegation clause before the trial court. Rather they argued the entire agreement was unconscionable because it was presented in English.

Because the unconscionability argument is intertwined with plaintiffs' contention that they did not agree to Uber's Terms because they were in Spanish, we will address the overall compliance of the arbitration agreement with the governing principles of law.

As with all contracts, arbitration agreements must be the product of the mutual assent of both parties. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014). Mutual assent requires a showing that the parties understand the terms to which they are agreeing. Ibid. In the context of arbitration agreements, a party must "have full knowledge of his legal rights and intent to

11

surrender those rights," and courts will take special care in making sure there was a knowing assent to the terms of an arbitration agreement. Ibid. (citations omitted). The waiver-of-rights provisions must be "clear and unambiguous— that is, the parties must know that there is a distinction between resolving a dispute in arbitration and in a judicial forum." Id. at 445.

It cannot be disputed that the arbitration clause in Uber's Terms was compliant in all respects with Atalese. In large capital bold letters, the user was informed that they were required to resolve all claims, including those for personal injuries arising out of a car accident, in binding arbitration "and not in a court of law." The details of the arbitration process were meticulously spelled out.

The only question then is whether Blanca assented to the terms. Uber's records indicated Blanca downloaded the Uber app in 2016. O'Connor certified that a user must register for an account and agree to Uber's Terms before the user can access and utilize Uber's platform. O'Connor searched Uber's database for the email address associated with Blanca's account and noted Blanca had used the app to order and complete rides from December 2016 until December 2022. Therefore, Blanca had agreed to Uber's Terms in 2016 prior to her first use of the app.

12

According to O'Connor, when Blanca accessed the app on March 23, 2021, she

> was presented with an in-app blocking pop-up screen with the header "We've updated our terms." It also stated in large type, "We encourage you to read our Updated Terms in full" and under that message had the phrases "Terms of Use" and "Privacy Notice," which were displayed underlined and in bright blue text, all of which set the text apart from other text on the screen and indicated a hyperlink. When a user clicked either hyperlink, the Terms of Use or Privacy Notice, that were published on Uber's website respectively, were displayed. . . .
>
> Based upon my personal knowledge, the in-app blocking pop-up screen precluded the use of the Uber app unless or until a user clicked the checkbox on the screen and clicked the large "Confirm" button at the bottom of the screen.
>
> The in-app blocking pop-up screen expressly stated that: "By checking the box, I have reviewed and agreed to the Terms of Use and acknowledge the Privacy Notice." . . .
>
> . . . .
>
> . . . Uber's records indicate that [Blanca] clicked the checkbox and tapped "Confirm" on March 23, 2021.

In her certification opposing the motion to compel arbitration, Blanca stated only that she did "not recall checking off any box" and she "did not agree to arbitrate any of [her] claims." In a second certification accompanying a sur

13

reply, Blanca stated the Terms and arbitration agreement were "still in English." This is her first reference to accessing the Terms.

Plaintiffs' scant assertions are not sufficient to overcome the documentary evidence produced by the Uber defendants and the factual findings of the trial court supporting the determination that Blanca assented to Uber's Terms, including the arbitration agreement. Blanca does not state that she did not read the Terms. Nor does she state that she accessed them but could not read them because they were in English. She also does not dispute the evidence that she checked the "Confirm" box before she booked her ride on the day of the accident. She simply said she did not recall doing so.

Clickwrap agreements are "routinely enforced by the courts" because "[b]y requiring a physical manifestation of assent, a user is said to be put on inquiry notice of the terms assented to." Santana, 475 N.J. Super. at 288-89 (alteration in original) (first quoting Skuse, 244 N.J. at 55 n.2, and then quoting Applebaum v. Lyft, Inc., 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017)).

O'Connor certified that Blanca could not book a ride on March 23, 2021, if she did not agree to Uber's Terms. Uber's records reflect Blanca checked the Confirm box, advising she had reviewed and agreed to the Terms. It is not disputed that the pop-up notification and consent checkbox on the Uber app were

14

in large print and in Spanish.  We are satisfied Uber provided sufficient notice to Blanca that she was agreeing to Uber's terms.

Blanca does not state that she clicked the hyperlink to access and read the Terms or, that after she did so, the Terms were in Spanish.  It is her counsel who stated during oral argument before the trial court and in the appellate brief that when he used the app set to Spanish and clicked the hyperlink, the Terms were in English.

Nevertheless, even if we accept the assertion that the Terms were in English, the Uber defendants met the well-established principles of notice and mutual assent regarding the applicability of an arbitration agreement.  Once Blanca clicked the box confirming she had read and assented to the Terms, it is assumed she read and understood the Terms' legal effect.  See Rodriguez v. Raymours Furniture Co., 436 N.J. Super. 305, 321 (App. Div. 2014), rev'd on other grounds, 225 N.J. 343 (2016).  If Blanca did not read the Terms, that does not relieve her of her obligations under the contract.  Skuse, 244 N.J. at 54.  If the Terms were in Spanish, Blanca could use one of the many available technological assistants to read them in her native language such as web translators.  Plaintiffs have not demonstrated the arbitration agreement was procedurally unconscionable.

For the reasons stated, we are also satisfied the agreement was not substantively unconscionable. The terms were mutual, and Blanca was free to choose an alternative service for transportation.

Plaintiffs urge this court to remand to the trial court for discovery. Given Blanca has stated she cannot recall checking any boxes on the app and Uber's production of the relevant determinative documents, plaintiffs have failed to demonstrate how discovery would alter our analysis or conclusion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3979-23