MURRAY CONNELL AND ELIZABETH CONNELL, HIS WIFE, PLAINTIFFS–APPELLANTS, v. AMERICAN FUNDING LIMITED, A NEW JERSEY LIMITED PARTNERSHIP, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 22, 1988—Decided January 5, 1989.

Before Judges MICHELS and KEEFE.

*Weber, Muth & Weber,* attorneys for appellants (*George J. Cotz,* on the brief).

*Carella, Byrne, Bain & Gilfillan,* attorneys for respondent (*Kenneth L. Winters,* on the brief).

The opinion of the court was delivered by

KEEFE, J.S.C. (temporarily assigned).

Plaintiffs, Murray and Elizabeth Connell, appeal from an order granting summary judgment to the defendant and dismissing plaintiffs' case. Plaintiffs concede that there are no genuine issues of fact. They simply disagree with the trial judge's interpretation of the Secondary Mortgage Loan Act, *N.J.S.A.* 17:11A–34 *et seq.* (Act)

On September 8, 1983, plaintiffs closed a mortgage loan with defendant, a secondary mortgage lender, in the amount of $150,000.00 which was secured by a second mortgage on plaintiffs' residence. In September, 1985 plaintiffs sold the house and paid off the mortgage. Thereafter, the mortgage was cancelled of record.

Approximately two months later plaintiffs' attorney wrote to defendant indicating a "disagreement" with the pay-off figure regarding the mortgage in question. In response to that letter, counsel for defendant sent plaintiffs' counsel a refund check in the amount of $17,913.68. The refund was based upon a re-computation of the mortgage pay-off figure due to an error in the computation of interest as well as a refund of the prepayment penalty. Plaintiffs changed attorneys after receiving, but not depositing, the refund check because they felt that the amount of the refund was too low. Plaintiffs' new counsel demanded that defendant refund all money ever paid by the plaintiffs with respect to the mortgage including the previously discussed refund check.

When defendant did not comply with the demand plaintiffs instituted the present action in which they sought a return of all monies paid by them on the mortgage claiming that it violated the Act. After some discovery was taken, the parties cross moved for summary judgment. On December 22, 1987,

Judge Arthur J. Lesemann issued a 15 page opinion granting defendant's motion for summary judgment and dismissed plaintiffs' complaint. This appeal followed. On appeal plaintiffs contend that a lender, who violates the Act, must forfeit principal as well as other payments made, including interest, while the loan was in effect.

We affirm the decision of Judge Lesemann essentially for the reasons expressed by him in his opinion reported at 231 *N.J.Super.* 409 (Ch.Div.1987). One additional observation is appropriate. *HIMC Investment Co. v. Siciliano,* 103 *N.J.Super.* 27 (Law.Div.1968) was decided on August 20, 1968. The Act was approved on September 30, 1970. "In construing a statute it is to be assumed that the Legislature is thoroughly conversant with its own legislation and the judicial construction placed thereon." *In re Keogh–Dwyer,* 45 *N.J.* 117, 120 (1965). Indeed, the Senate Statement accompanying the bill which ultimately became the Act recognized the existence of litigation concerning the interpretation of the predecessor Act of 1965 and expressed no disapproval of it.

"Any differences in specific statutory language between this revision and the predecessor Act are not indicative of a legislative intent as to the construction and interpretation of the Act of 1965. The changes made, instead, represent an accommodation to the total revision of the law. Therefore, the changes embodied herein should not affect any existing court proceedings concerning the interpretation and construction of the Secondary Mortgage Loan Act of 1965, or any such proceedings which may be subsequently filed based on that Act." Statement S 289, P.L.1970 c. 205.

The purpose of the 1970 revision, therefore, was not to undo anything that the courts had accomplished by statutory interpretation, but, rather to limit the amount of money that could be charged and collected by secondary mortgage lenders.

One of the most significant changes is in the amount of money derived from the making of a secondary mortgage loan. This bill makes a significant departure from the present law by disallowing the receipt of any fees or charges by a licensee in connection with a secondary mortgage loan, other than interest allowable pursuant to the terms of the legislation. Experience has shown that a large percentage of licensees have consistently been receiving the maximum allowable fees and charges under the Act of 1965, in addition to the interest permitted thereunder. The allowance of specified fees and charges provided a

method whereby licensees were able to circumvent the policy and spirit of the legislation, since the combination of fees and charges plus interest amounted to an effective interest rate charged far in excess of that contemplated by the legislature. *Id.*

Under the circumstances of this case the only significance we impart to the Legislature's addition of the word "void" to be used in conjunction with the word "unenforceable" in the statute is to clarify the right of a borrower to initiate suit for cancellation of the mortgage rather than wait for suit to be brought by the lender whereupon the defense of unenforceability can be raised. See *Stubbs v. Security Consumer Discount Co.,* 85 *N.J.* 353 (1981) and *Westervelt v. Gateway Financial Service,* 190 *N.J.Super.* 615 (Ch.Div.1983).

Affirmed.