NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2830-14T2


GRANT W. MORGAN,

      Plaintiff-Respondent,

  v.

RAYMOURS FURNITURE COMPANY, INC.,
PATRICK HYNES, and WENDY
GREENWALD,

      Defendants-Appellants.

_____

| |
| --- |
| **APPROVED FOR PUBLICATION** |
| **January 7, 2016** |
| **APPELLATE DIVISION** |

      Argued November 17, 2015 — Decided January 7, 2016

      Before Judges Fisher, Espinosa and Rothstadt.

      On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2257-14.

      James G. Fannon argued the cause for appellants (Law Office of James G. Fannon, and Edward T. Groh, attorneys; Mr. Fannon and Mr. Groh, on the brief).

      Alan H. Schorr argued the cause for respondent (Alan H. Schorr & Associates, P.C., attorneys; Mr. Schorr, on the brief).

      Andrew Dwyer argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (The Dwyer Law Firm, L.L.C., attorneys; Mr. Dwyer, of counsel and on the brief).

William D. Wright argued the cause for amicus curiae New Jersey Association for Justice (The Law Office of William Wright LLC, attorneys; Mr. Wright, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In this appeal, we consider whether plaintiff is bound to arbitrate his claims against his former employer. Because the employee handbook, which contains an arbitration clause and a purported waiver of plaintiff's right to sue, clearly conveyed that its "rules, regulations, procedures and benefits . . . are not promissory or contractual in nature and are subject to change by the company," we agree with the motion judge that plaintiff did not clearly and unambiguously waive his right to sue defendants in court.

On September 19, 2014, plaintiff Grant W. Morgan commenced this action against his former employer, defendant Raymours Furniture Company, and two Raymours representatives, alleging a violation of the Law Against Discrimination, N.J.S.A. 10:5-1 to -49, wrongful termination, and other similar causes of action. After unsuccessfully moving for a change of venue — an application that might fairly suggest a waiver of the right to

arbitrate[1] — defendants moved to compel arbitration. That motion was denied as well, and defendants appeal, as is their right despite the interlocutory nature of the order in question. See R. 2:2-3(a).

In appealing, defendants present the following arguments:

> I. THE TRIAL COURT ERRED BY FAILING TO ENFORCE THE PARTIES' AGREEMENT TO ARBITRATE, WHICH SATISFIES ALL OF THE CUSTOMARY CONTRACT FORMATION ELEMENTS.
>
>> A. The FAA[2] Requires Application of Ordinary State-Law Principles Governing The Formation Of Contracts in Determining Whether Parties Have Agreed to Arbitrate.
>>
>> B. Raymour & Flanigan Made A Clear, Unmistakable And Unambiguous Offer of [Its Employee Arbitration Program (EAP)].
>>
>> C. Plaintiff Accepted The EAP on Multiple Occasions in Multiple Ways.
>>
>> D. Sufficient Consideration Supported The EAP.
>>
>> E. Plaintiff's Claims Are Within The Scope Of The EAP.
>
> II. THE TRIAL COURT ERRED BY FOCUSING EXCLUSIVELY ON PLAINTIFF'S SIGNATURE ON THE 2013 COMMISSION AGREEMENT AND BY HOLDING

---

[1] Such an argument was not raised on appeal and we, therefore, offer no further view on the impact of that circumstance on the arbitration issue presented.

[2] Federal Arbitration Act, 9 U.S.C.A. §§ 1-16.

A-2830-14T2

THAT IT WAS INSUFFICIENT TO MANIFEST HIS ASSENT TO THE EAP.

III. THE TRIAL COURT ERRED BY DISREGARDING THE U.S. SUPREME COURT'S SEVERABILITY DOCTRINE AND DENYING ENFORCEMENT OF THE EAP BASED UPON ITS ASSESSMENT OF THE SURROUNDING HANDBOOK.

IV. THE TRIAL COURT ERRED BECAUSE IT APPLIED HEIGHTENED, ARBITRATION SPECIFIC STANDARDS TO THE EAP.

V. IN THE EVENT THE COURT FINDS GENUINE DISPUTES OF MATERIAL FACT REMAIN, DEFENDANTS REQUEST THAT THE ACTION BE REMANDED WITH INSTRUCTIONS TO CONDUCT AN EVIDENTIARY HEARING (Not Raised Below).

In light of well-established legal principles governing the availability of arbitration in this and similar settings, reiterated in a number of recent cases, see, e.g., Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 444-45 (2014), cert. denied, __ U.S. __, 135 S. Ct. 2804, 192 L. Ed. 2d 847 (2015); Barr v. Bishop Rosen & Co., __ N.J. Super. __, __ (App. Div. 2015) (slip op. at 6-9),[3] we find insufficient merit in defendants' arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

The circumstances at hand are relatively simple. Plaintiff contends that upon complaining of age discrimination in the

---

[3] These are but a few and only two of the most recent; our jurisprudence suffers no shortage of case law on this subject.

workplace, defendants confronted him with an ultimatum — that he either sign a stand-alone arbitration agreement or defendants would terminate his employment. Plaintiff refused to sign the agreement and defendants carried out their threat. Plaintiff was terminated and this suit followed.

Despite plaintiff's refusal to sign an arbitration agreement, defendants moved to compel arbitration on the basis of the company handbook. Although plaintiff disputes that he actually read or acknowledged receipt of the handbook, he consented to the trial court's consideration of these issues on the assumption that he acknowledged receipt of the handbook and EAP in August 2011, February 2012, and April 2013[4]; like the trial judge, we find these circumstances unavailing.

For example, the handbook is prefaced with the employer's disclaimer as to the nature of the parties' undertaking:

> Nothing in this Handbook or any other Company practice or communication or document, including benefit plan descript-tions, creates a promise of continued employment, [an] employment contract, term

---

[4] Plaintiff allegedly signed in December 2013 another document relating to the commission rate by which he would be compensated; in signing, plaintiff expressed that he "agree[d]" disputes would be subject to the EAP. We agree with the trial judge that this document, if actually signed, would only give rise to the possibility that a dispute about commissions — not discrimination or wrongful termination claims — would be arbitrable.

> or obligation of any kind on the part of the Company.
>
> [Emphasis added.]

In addition, when electronically acknowledging receipt of this documentation, an employee signifies only that he or she "<u>received</u> a copy of the Associate Handbook" (emphasis added), and, further, that he or she

> <u>understand</u>[<u>s</u>] that the rules, regulations, procedures and benefits contained therein are <u>not promissory or contractual</u> in nature and are subject to change by the company.
>
> [Emphasis added.]

These disclaimers were likely included because of <u>Woolley v. Hoffman-LaRoche, Inc.</u>, 99 <u>N.J.</u> 284, 309, <u>modified</u>, 101 <u>N.J.</u> 10 (1985), where the Court determined that company manuals may create implied contractual rights and duties, but that employers — to avoid this possibility — could include a prominent disclaimer of the contractual nature of a handbook.

Here, the employer would seek both the benefit of its disclaimer in most instances, while insisting that the handbook was contractual when it suits its purposes — a proposition to be rejected if for no other reason than it runs counter to the ancient English proverb: "wolde ye bothe eate your cake, and haue your cake?" John Heywood, <u>Dialogue of Proverbs</u> (1546), as well as its corollary, which may have originated with Aesop,

6

"sauce for the goose is sauce for the gander." Of course, our decisions are not governed by clichés, but these in particular can be found at the root of the court's equity jurisdiction. For example, estoppel principles preclude a party from disavowing a previous position if repudiation violates the demands of justice and good conscience. <u>Carlsen v. Masters, Mates & Pilots Pension Plan Tr.</u>, 80 <u>N.J.</u> 334, 339 (1979); <u>Connell v. Am. Funding, Ltd.</u>, 231 <u>N.J. Super.</u> 409, 416 (Ch. Div. 1987), <u>aff'd o.b.</u>, 231 <u>N.J. Super.</u> 202 (App. Div. 1989). In this setting, it is simply inequitable for an employer to assert that, during its dealings with its employee, its written rules and regulations were not contractual and then argue, through reference to the same materials, that the employee contracted away a particular right. <u>See also</u> 2 <u>Pomeroy's Equity Jurisprudence</u> § 385, at 52 (5th ed. 1941) (recognizing "that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he had acknowledged and conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adversary

party, and growing out of or necessarily involved in the subject matter of the controversy").[5]

In any event, our Supreme Court has made clear that an employee in this circumstance must "clearly and unambiguously" agree to a waiver of the right to sue. Atalese, supra, 219 N.J. at 443. By inserting such a waiver provision in a company handbook, which, at the time, the employer insisted was not "promissory or contractual," an employer cannot expect — and a court, in good conscience, will not conclude — that the employee clearly and unambiguously agreed to waive the valued right to sue. And, by the same token, in obtaining the employee's signature on a rider, which stated only that the employee "received" and "underst[ood]" the contents of the company handbook or rules and regulations, the employer cannot fairly contend the employee "agreed" to a waiver of the right to sue that might be found within those materials. Leodori v. CIGNA Corp., 175 N.J. 293, 307, cert. denied, 540 U.S. 938, 124 S. Ct. 74, 157 L. Ed. 2d 250 (2003); Barr, supra, __ N.J. Super. at __ n.5 (slip op. at 13 n.5). These principles preclude enforcement of the arbitration provision and waiver of the right to sue

---

[5] Make no mistake, although the dispute about the parties' transactions evoke questions of law, defendants seek a mandatory injunction — a stay of this lawsuit and an order compelling of arbitration — that triggers the court's equity jurisdiction.

contained within Raymours' company handbook and related documents.[6]

We also reject defendants' forceful argument that such a determination conflicts with federal law. We disagree on the strength of our Supreme Court's own prior rulings, cited above, regarding the relationship between federal and state law in such matters. We also note that one week after we heard argument in this case, a federal court of appeals came to the same conclusion that we now reach in nearly identical circumstances. Lorenzo v. Prime Commc'ns, L.P., __ F.3d __ (4th Cir. 2015).

We lastly recognize that had plaintiff executed the stand-alone arbitration agreement presented to him when a rift formed in the parties' relationship, a different outcome would likely

---

[6] In Rodriquez v. Raymours Furniture Co., 436 N.J. Super. 305 (App. Div. 2014), the plaintiff's execution of a job application — and its incorporated "agreement" to limit to six months the applicant's time for filing any future lawsuit against Raymours — was found enforceable. The Supreme Court granted certification, 220 N.J. 100 (2014), heard oral argument on December 1, 2015, and has yet to file an opinion. Although our colleagues' published opinion in Rodriquez was filed eight months before this appeal was filed, neither plaintiff nor defendants — nor able amici — referred to Rodriquez in any of their written or oral submissions. Consequently, we invited and have received the parties' letters explaining their thoughts on Rodriquez. We agree with plaintiff that the many distinguishing features between this case and Rodriquez demonstrate its inapplicability here. We also take — with more than a modicum of salt — defendants' sudden contention that Rodriquez is supportive of the arguments they pose here.

have followed.  To that we only need say, "if my grandmother had wheels, she'd be a bicycle."

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                                    A-2830-14T2