**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5315-17T1

TAMMIE S. NAU,

    Plaintiff-Appellant,

v.

DAVID CHUNG and ENGLEWOOD
LAB, INC.,

    Defendants-Respondents.

_____

Argued May 15, 2019 – Decided June 24, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000145-18.

Michael S. Horn argued the cause for appellant (Archer & Greiner, PC, attorneys; Steven B. Harz and Michael S. Horn, on the briefs).

Claudia A. Costa and Marc Cytryn argued the cause for respondents (Gordon & Rees, LLP, attorneys for Englewood Lab, Inc.; Kaufman Dolowich Voluck, LLP, attorneys for David Chung; Gregory S. Hyman,

Marc Cytryn and Hillary A. Fraenkel, on the joint brief).

PER CURIAM

Plaintiff Tammie S. Nau appeals from a Chancery Division order dismissing her complaint pursuant to Rule 4:6-2(a) for lack of jurisdiction and directing that her claims proceed in mediation and arbitration in accordance with defendant Englewood Lab, Inc.'s (Englewood) arbitration policy. We affirm.

I.

Plaintiff filed a complaint against Englewood and its chief executive officer, defendant David Chung. The complaint alleged Chung offered plaintiff a position as Englewood's Executive Vice President and that she would receive "a substantial number of shares" in Englewood "once she started working," equating to an equity interest in the company of no less than $7 million and no more than $9 million.

Plaintiff accepted the position and entered into a December 12, 2017 written employment agreement with Englewood. Plaintiff agreed to "comply with all [of Englewood's] policies, procedures, rules and regulations, both written and oral." The agreement further provided for "[s]tock [o]ption terms to be finalized as promised by [the] end of 2018." The agreement did not otherwise

A-5315-17T1

provide for plaintiff's receipt of shares of stock or an equity interest in Englewood.

Shortly after signing the employment agreement, plaintiff received Englewood's Employee Handbook. The handbook's introduction states "the procedures, practices, policies and benefits described in the [h]andbook may be modified or discontinued by [Englewood] at any time, as it deems appropriate and at its sole discretion. Nothing in this [h]andbook creates a contract or otherwise modifies the at-will employment relationship."

Section 710 of the handbook addresses dispute resolution, mediation, and arbitration. In pertinent part, it provides as follows:

> If a dispute cannot be resolved internally, you and ENGLEWOOD LAB agree to first engage in mediation, and then arbitrate any remaining disputes.
>
> For purposes of this policy, the following definitions apply:
>
> "ENGLEWOOD LAB" or the "Company" shall mean ENGLEWOOD LAB, LLC, its officers, directors, owners, managers, employees, agents, [affiliated] entities, subsidiaries, clients, vendors, and parent companies.
>
> "Dispute", "Claim", or "Controversy" shall be broadly interpreted to mean any claim you may have against ENGLEWOOD LAB, or ENGLEWOOD LAB may have against you, relating to, arising from, or having any relationship or connection whatsoever with your employment with ENGLEWOOD LAB or the

3

termination thereof. This applies to claims including, but not limited to, claims for wages or other compensation due, claims for breach of any contract or covenant, tort claims including but not limited to libel, slander, fraud, and intentional infliction of emotional distress, claims for discrimination (including, but not limited to, race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability), claims for benefits, and claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance, except claims excluded by the terms of this agreement. This includes claims arising under the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Family and Medical Leave Act (FMLA), the Fair Labor Standards Act (FLSA), 42 U.S.C. § 1981, including amendments to all the foregoing statutes, the Employee Polygraph Protection Act, the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, or any other applicable federal, state, or local laws, and/or common law regulating employment termination, misappropriation, breach of the duty of loyalty, the law of contract or the law of tort; including, but not limited to, claims for malicious prosecution, wrongful discharge, wrongful arrest/wrongful imprisonment, intentional/negligent infliction of emotional distress or defamation.

"Disputes", "Claims" or "Controversies" does not include claims for state employment insurance (e.g., unemployment compensation, workers' compensation, worker disability compensation) or under the National Labor Relations Act.

. . . .

Neither ENGLEWOOD LAB nor you can file a civil lawsuit in court against the other party relating to such

4

claims, with the exception of claims for emergent relief related to the misuse or misappropriation of confidential business information and/or violation of the confidentiality and non-disclosure agreement. If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through arbitration.

If a party files a lawsuit in court involving claims that are, and other claims that are not, subject to arbitration, such party shall request the court to stay litigation of the nonarbitrable claims and require that arbitration take place with respect to those claims subject to arbitration.

. . . .

THE SUBMISSION OF AN APPLICATION, ACCEPTANCE OF EMPLOYMENT OR THE CONTINUATION OF EMPLOYMENT BY YOU SHALL BE DEEMED TO BE ACCEPTANCE OF THIS ARBITRATION POLICY. NO SIGNATURE SHALL BE REQUIRED FOR THE POLICY TO BE APPLICABLE. THE MUTUAL OBLIGATIONS SET FORTH IN THIS AGREEMENT SHALL CONSTITUTE A CONTRACT BETWEEN YOU AND ENGLEWOOD LAB BUT SHALL NOT CHANGE YOUR AT-WILL RELATIONSHIP OR ANY TERM OF ANY OTHER CONTRACT OR AGREEMENT BETWEEN ENGLEWOOD LAB AND YOU. THIS POLICY SHALL CONSTITUTE THE ENTIRE AGREEMENT BETWEEN YOU AND ENGLEWOOD LAB REGARDING THE RESOLUTION OF COVERED CLAIMS.

Plaintiff signed an "Acknowledgement and Receipt of Handbook" form which, in relevant part, states:

I acknowledge that I have received a copy of ENGLEWOOD['s] Employee Handbook . . . . I understand that I am expected to comply fully with each of those policies as a condition of my employment with ENGLEWOOD . . . .

I understand and acknowledge that this Handbook is intended to provide me with general information about ENGLEWOOD['s] policies and procedures, that it is not a contract of employment, and that the Handbook is not intended as a promise or guarantee of my employment or of any particular term or condition of my employment.

I understand and acknowledge that ENGLEWOOD . . . may amend, modify, supersede or terminate the policies described in the Handbook, or introduce new policies and/or procedures, in its sole discretion, and at any time, with or without notice to me.

. . . .

I agree to mediate and arbitrate any claims I may have against ENGLEWOOD . . . as described in Section 710 of this Handbook, and waive my right to a trial by jury.

I understand and acknowledge that my employment with ENGLEWOOD . . . is "at will," meaning that ENGLEWOOD . . . can terminate my employment . . . at any time, with or without notice or cause, and for any or no reason. . . . I understand and acknowledge that my "at will" employment status may not be altered by any oral or written statement made or issued by a[n Englewood] representative, with the exception of a written employment agreement signed by an officer of [Englewood].

[(Emphasis added).]

6

The complaint alleges that following the commencement of plaintiff's employment, Chung sold "a majority stake" in Englewood without plaintiff's knowledge or consent.  Plaintiff claimed it was "unknown" if the transaction involved the sale of Englewood stock shares she allegedly owned and Chung did not notify her of any meeting at which a vote was taken to approve the sale and change in control of Englewood.  The complaint also alleged Chung denied plaintiff access to Englewood's books and records and violated her employment agreement by changing her role in the company.

Plaintiff sought a declaratory judgment that she is a shareholder of Englewood and Chung's alleged transfer of her putative shares is null and void. The complaint asserted causes of action against Englewood and Chung for breach of "a number of agreements" between plaintiff and Englewood, breach of the covenant of good faith and fair dealing, unjust enrichment and conversion. Plaintiff also asserted claims against Chung for breach of fiduciary duty, minority shareholder oppression, misrepresentation and concealment.

Englewood and Chung moved to dismiss the complaint pursuant to Rule 4:6-2(a), claiming the court lacked jurisdiction because plaintiff is obligated to mediate and arbitrate her claims pursuant to the arbitration policy in the

handbook because she executed the acknowledgment form which included her express agreement to be bound by the policy.

Plaintiff opposed the motion, asserting her employment agreement did not include a mediation or arbitration requirement and that the handbook and acknowledgment she signed incorporating the arbitration policy did not constitute a binding contract. In the alternative, plaintiff claimed that even if she is bound to arbitrate, the claims in her complaint do not fall within the coverage of the arbitration policy.

Judge Robert P. Contillo heard argument on defendants' motion and issued a detailed written decision and order dismissing the complaint without prejudice for lack of subject matter jurisdiction. See R. 4:6-2(a). Judge Contillo found plaintiff "clearly and unambiguously assented" to Englewood's arbitration policy by executing the acknowledgment that included a waiver of the right to a jury trial and an express agreement to mediate and arbitrate in accordance with Section 710 of the handbook, and that the policy encompassed the claims asserted in the complaint. The judge also found that although plaintiff believed otherwise, she was not a shareholder in Englewood and had not been issued any shares. The judge ordered "that all claims should be mediated then arbitrated consistent with the valid [a]rbitration [p]olicy." This appeal followed.

II.

We review the court's order granting defendants' motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019); see also Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 445-46 (2014) ("Our review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation. Our approach in construing an arbitration provision of a contract is governed by the same de novo standard of review." (citations omitted)).

We must be "mindful of the strong preference to enforce arbitration agreements." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, favors enforcement of arbitration agreements. AT&T Mobility, LLC v. Concepcion, 563 U.S. 333, 339 (2011). The "overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." Id. at 344. "The [FAA] and the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies

favoring arbitration" as a mechanism of resolving disputes that otherwise would be litigated.  Atalese, 219 N.J. at 440 (citation omitted).

"An agreement to arbitrate 'must be the product of mutual assent, as determined under customary principles of contract law.'"  Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605-06 (App. Div. 2015) (quoting Atalese, 219 N.J. at 442).  As noted recently by our Supreme Court, "[a]n arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'"  Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).

"Mutual assent requires that the parties understand the terms of their agreement[,]" and where the "agreement includes a waiver of a party's right to pursue a case in a judicial forum, 'clarity is required.'"  Barr, 442 N.J. Super. at 606 (quoting Moore v. Woman to Woman Obstetrics & Gynecology, LLC, 416 N.J. Super. 30, 37 (App. Div. 2010)).  An arbitration agreement that includes a waiver of an employee's right to assert causes of action in court against an employer requires "an explicit, affirmative agreement that unmistakably reflects the employee's assent."  Leodori v. Cigna Corp., 175 N.J. 293, 303 (2003).

Applying these principles, we are unpersuaded by plaintiff's claim that she did not have an obligation to arbitrate because her employment agreement lacked an arbitration provision. "[T]he question of enforceability" of plaintiff's arbitration obligation "is determined not on the basis of whether the arbitration agreement is contained in . . . an employment contract, but rather whether the arbitration provision qualifies as a valid and enforceable contract." Martindale v. Sandvik, Inc., 173 N.J. 76, 87 (2002). Although her employment agreement did not include an arbitration provision, plaintiff signed the acknowledgment expressly agreeing to mediate and arbitrate any claims against Englewood "as described in Section 710 of the [h]andbook." An employee's "signature to an agreement is the customary and perhaps surest indication of assent." Leodori, 175 N.J. at 306-07. Plaintiff's execution of the plainly worded acknowledgment provides that unmistakable indication here.[1]

Plaintiff also asserts she is not contractually bound by Section 710 because the handbook's introduction states that "[n]othing in this [h]andbook creates a contract," and that language creates an ambiguity as to whether she could be contractually bound by the handbook's provisions. The record does not support

---

[1] Plaintiff does not argue that Section 710 of the handbook is unclear or ambiguous.

plaintiff's contention because her arbitration obligation is not founded on the handbook's terms; that is, Englewood does not claim and the court did not find that plaintiff is contractually bound to arbitrate under the handbook's terms. Rather, the court found, and we agree, plaintiff's execution of the acknowledgment, which clearly and unequivocally provides that plaintiff agrees to arbitrate her claims in accordance with Section 710 of the handbook, constitutes the binding contractual obligation requiring the mediation and arbitration of plaintiff's claims.

Nothing in the handbook precludes plaintiff's execution of a separate document, such as the acknowledgment, adopting the handbook's provisions as binding contractual obligations. In Leodori, the Court recognized that an arbitration agreement may be set forth in a document separate from the one describing the terms of the arbitration obligation. 175 N.J. at 307. The Court held that where an employee acknowledges and assents to an arbitration agreement in a document separate from the one describing the arbitration obligation, the acknowledgment form "need not recite [the full] policy verbatim so long as the form refers specifically to arbitration in a manner indicating an employee's assent, and the policy is described more fully in an accompanying

handbook or in another document known to the employee." Ibid. That is the precise circumstance present here.

Plaintiff relies on our decision in Morgan v. Raymours Furniture Co., where we found that an employee was not bound by an arbitration policy in the employer's handbook. 443 N.J. Super. 338, 343 (App. Div. 2016). In Morgan, the employee was terminated following his refusal to sign a stand-alone arbitration agreement, id. at 341, and then filed a complaint asserting claims under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49, and for wrongful termination and other similar claims, id. at 339-40. The employer moved to dismiss the complaint, arguing the employee was bound to arbitrate his claims under an arbitration provision in an employee handbook, the receipt of which the employee had acknowledged. Id. at 341.

We affirmed the trial court's denial of the employer's motion, finding no evidence the employee "'clearly and unambiguously' agree[d] to a waiver of the right to sue," id. at 343 (quoting Atalese, 219 N.J. at 443), a waiver the employer had stated "was not 'promissory or contractual,'" and "the employer cannot fairly contend the employee 'agreed' to a waiver of the right to sue," because the employee only acknowledged he "'received' and 'underst[ood]' the contents of the . . . handbook," ibid. (first alteration in original).

Here, plaintiff did not merely acknowledge receipt of the handbook or that she understood its terms. She executed the acknowledgment that included a separate and express agreement to mediate and arbitrate her claims against Englewood in accordance with Section 710 of the handbook. As we explained in Morgan, "had plaintiff executed the stand-alone arbitration agreement presented to him . . . a different outcome would likely have followed." Id. at 344. That different outcome is required where, as here, an employee executes an agreement separate from a handbook, but which expressly provides that the employee agrees to be bound by clearly defined provisions contained within the handbook. See Leodori, 175 N.J. at 305 (finding an arbitration clause will be enforced where there is an "explicit indication that the employee intended to abide by that provision").

Contrary to plaintiff's assertion, our conclusion that she is bound by her agreement to mediate and arbitrate in accordance with Section 710 of the handbook is supported by the Supreme Court's decision in Leodori. In Leodori, the Court found that an acknowledgment of receipt of a handbook, which included an arbitration provision, did not create a contractual obligation to arbitrate because the acknowledgment stated only that the employee "received" the handbook. Id. at 297, 306. The Court specifically noted that "the

acknowledgment form that [the] plaintiff did sign would have sufficed as concrete proof of a waiver had it stated that the employee had agreed to the more detailed arbitration provision contained in the handbook." Id. at 307. Here, plaintiff executed the acknowledgment which included the "affirmative agreement that unmistakably reflects [plaintiff's] assent," id. at 303, to the arbitration policy the Court found missing in Leodori, see id. at 306.

Plaintiff also argues that any purported contract formed by her execution of the acknowledgment is unenforceable as illusory because the handbook's introduction states it "may be modified or discontinued by [Englewood] at any time, as it deems appropriate and at its sole discretion." See Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 477 (App. Div. 2015) ("Under general principles of contract law, an agreement . . . based only upon an illusory promise is unenforceable."). We disagree. By her execution of the acknowledgment, plaintiff agreed to mediate and arbitrate her claims "as described in Section 710 of this [h]andbook," and thus her contractual obligation was limited to only the version of Section 710 contained in the handbook extant when she signed the agreement. Her obligation to mediate and arbitrate is defined solely by the terms of the acknowledgment that she signed, and it does not allow for any modification of the mediation and arbitration requirement from that which is set

15

forth in Section 710 of "this [h]andbook." As such, there is nothing in the agreement rendering the clearly defined mediation and arbitration agreement illusory.

We are also unpersuaded by plaintiff's contention that the arbitration policy in Section 710 is unenforceable because it provides that "NO SIGNATURE SHALL BE REQUIRED FOR THE POLICY TO BE APPLICABLE." We recognize that an affirmative showing of mutual assent to a waiver of an employee's right to a jury trial is required and that a lack of an affirmative indication of assent, in the form of a signature or otherwise, will render an arbitration policy unenforceable. See Leodori, 175 N.J. at 303, 307. But we find plaintiff's reliance on the language misplaced because she actually executed the acknowledgment and thereby provided the affirmative assent required to constitute a valid and binding agreement.

Because we are satisfied plaintiff agreed to be contractually bound to mediate and arbitrate her claims under Section 710 of the handbook, we also address plaintiff's contention that the claims in the complaint are not encompassed by the arbitration policy's terms. "A court must look to the language of the arbitration clause to establish" the scope thereof and "its boundaries." Hirsch, 215 N.J. at 188. "[T]he proper starting point is the plain

16

meaning of the Arbitration Agreement. . . . Other interpretive principles need be employed only if the Agreement's plain meaning cannot be determined." Steigerwalt v. Terminix Int'l Co., 246 F. App'x 798, 801 (3d Cir. 2007).

The policy requires mediation and then arbitration of all disputes and, as noted, includes a broad definition of the disputes subject to its terms. The policy requires mediation and arbitration of claims "arising from, or having any relationship or connection whatsoever with [plaintiff's] employment with [Englewood]," "claims for . . . other compensation due, claims for breach of any contract or covenant," and claims for "breach of the . . . law of contract."

Plaintiff argues her claims fall outside the scope of the arbitration policy because the policy does not specifically state that it includes "shareholder disputes." However, her complaint does not allege she was actually issued or possessed any shares of stock in Englewood. It alleges a promise of shares of stock conditioned on plaintiff's acceptance of employment with Englewood and an entitlement to shares of stock based on an "equity interest" in accordance with the terms of her employment agreement.

Plaintiff's claim she is entitled to shares of stock is encompassed by the arbitration policy because it "arises from" her employment with Englewood and is founded on an alleged breach of contract. The complaint alleges she accepted

employment based on the promise of an equity interest, and her claims are necessarily founded on the terms of her employment agreement because it includes a provision defining her entitlement to an equity interest—"[s]tock [o]ption terms [are] to be finalized as promised by [the] end of 2018." We are satisfied they fall within the disputes covered by the arbitration policy.

We last reject plaintiff's argument that the arbitration policy does not bar her claims against Chung because he did not execute the acknowledgment form. Section 710 plainly requires that plaintiff mediate and arbitrate her disputes against Englewood, which is expressly defined to include its "officers, directors, owners . . . employees, [and] agents." The complaint alleges Chung is Englewood's chief executive officer and acted in that capacity in offering plaintiff her employment position, executing the employment agreement and undertaking the alleged sale of the "majority stake" in Englewood. Thus, the claims against Chung fall within the coverage of the arbitration policy because, at a minimum, the complaint alleges claims against Chung in his capacity as an employee and agent of Englewood.

Plaintiff also argues her claims fall outside the scope of the arbitration policy because "this matter involves equity that may be awarded under New Jersey's Business Corporation Act ('BCA')" and jurisdiction under the BCA is

18

expressly vested in the Superior Court, citing N.J.S.A. 14A:12-7 and 14A:12-15. We reject plaintiff's claim because the arbitration policy encompasses all statutory claims. In addition, the BCA pertains to actions by shareholders and, as alleged in the complaint, plaintiff is not a shareholder. Rather, she alleges only that she was promised shares after her employment commenced and her employment agreement provided only for possible stock options that were to be subject to a future agreement.

Any arguments asserted by plaintiff that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5315-17T1