**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0439-22

ROBERT SIPKO,

    Plaintiff-Respondent,

v.

KOGER, INC., KOGER
DISTRIBUTION SOLUTIONS,
INC., KOGER PROFESSIONAL
SERVICES, INC., KOGER
LIMITED (DUBLIN), and
GEORGE SIPKO,

    Defendants-Respondents,

and

RASTISLAV SIPKO,

    Defendant-Appellant.

_____

Argued October 3, 2023 – Decided November 13, 2023

Before Judges Whipple, Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000393-07.

Daniel Jay Cohen argued the cause for appellant (Newman, Simpson & Cohen, LLP, attorneys; Daniel Jay Cohen and Daniel C. Stark, on the briefs).

Erik M. Corlett argued the cause for respondent Robert Sipko (Pashman Stein Walder Hayden, PC, attorneys; Michael S. Stein, of counsel; Erik M. Corlett and Timothy Patrick Malone, on the brief).

PER CURIAM

Defendant Rastislav Sipko (Ras)[1] appeals from a post-judgment order approving a judgment credit allocation and calculation. Ras argues that the judge abused his discretion by entering the post-judgment order. We are persuaded that the judge properly exercised his discretion and, as such, affirm.

I.

The New Jersey Supreme Court has twice reviewed this matter and recited the parties' extensive history. Sipko v. Koger, 214 N.J. 364 (2013) and Sipko v. Koger, Inc., 251 N.J. 162 (2022). Here, it is unnecessary to repeat the long history of this "fractured family and broken family businesses . . . ." Sipko, 251 N.J. at 167. Instead, we summarize the facts and procedural history giving rise to this appeal.

---

[1] Given that the family members have the same last name, we use their first names to avoid confusion. We intend no disrespect by this informality.

A-0439-22

On August 19, 2016, the trial court entered a judgment awarding Robert damages against his father, George, his brother, Ras, and the corporate entities of Koger, KPS and KDS in the amount of $24,697,571.14. The judgment amount represented $18,260,257 for Ras' interest in KPS and KDS and $6,437,311.14 in pre-judgment interest.

Despite the entry of the judgment, George and Ras continued their "pattern of acts calculated to prevent Robert from obtaining compensation for his interests in KDS and KPS . . . ." Sipko, 251 N.J. Super. at 173. For instance: (1) "George and Ras claimed, without documentary support, that they were unable to post a bond," ibid.; (2) "Ras offered [real property in] Connecticut" despite, "without notice to the [New Jersey] court, . . . [having] obtained an attachment order in his Connecticut divorce proceeding which made that property part of the assets to be distributed in the divorce, and, therefore, beyond the [New Jersey] court's reach," Ibid. n.4; (3) "Ras 'drew down $2.5 million on his [Koger] credit line, exhausting the line,'" id. at 174; (4) they "revealed, apparently for the first time . . . that they owned real estate in Slovakia," ibid.; and (5) "[m]ost shockingly . . . transferred approximately $20 million in cash to overseas accounts . . . desperate to get the money out of the country and beyond [Robert's] reach." Id. at 176.

A-0439-22

Ras does not deny failing to make any voluntary payments to satisfy the judgment. Instead, after entry of a judgment in his favor, Robert was compelled to embark on a six-year effort to collect the awarded sum. Intermittently, as Robert recovered funds to satisfy the judgment, he provided Ras with contemporaneous information regarding the amount of each payment collected and the date it was applied as a judgment credit. Ras does not deny receiving this information. Moreover, Robert notes "the trial court has entered at least a dozen orders since 2017 governing the allocation of credits as between the judgment principal and interest related to payments." Ras does not deny notice of or the entry of the orders.

## II.

Ras argues it was an abuse of discretion for the judge to enter the "post-judgment order approving the judgment credit allocation and calculation." He avers: (1) "further discovery and examination was and is needed to properly evaluate the proposed judgment calculation"; (2) "judgment credits should be applied when funds were available or when available funds were ordered to be distributed"; and (3) "credits for payment under the April 16, 2018 and October

4

17, 2017 orders should be allocated to judgment principal, not post-judgment interest."[2]

A.

Ras argues that the judge erred in granting the judgment calculation without allowing him discovery or a further examination of the purported underlying facts.[3] Ras urges that these additional steps are necessary because the lengthy motion papers detailed a six-year history of piecemeal payments, which he was evaluating while incarcerated.

In response, Robert contends that Ras makes bald assertions for back-up materials and ignores the documentation supporting the motion. Moreover, Robert argues that Ras was advised "contemporaneously of each payment, the

---

[2] Robert argues that Ras has "unclean hands" and this appeal should be dismissed. We decline to consider this argument because either: (1) it was not presented to the motion judge and, therefore, is not appropriate on appeal, see Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973), or (2) the motion judge denied its application and Robert has not appealed that decision. See Pressler & Verniero, Current N.J. Rules, cmt. 5 on Rule 2:6-2 (2023).

[3] In his reply brief, Ras suggests that "an evidentiary hearing is necessary here." However, "[r]aising an issue for the first time in a reply brief is improper." Goldsmith v. Camden Cty. Surrogate's Off., 408 N.J. Super. 376, 387 (App. Div. 2009) (alteration in original) (quoting Borough of Berlin v. Remington & Vernick, Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001)).

A-0439-22

date of the credit, the court order it was received pursuant to, and the allocation of it to principal or interest pursuant to court order."

"Appellate review of a trial court's discovery order is governed by the abuse of discretion standard." State in Interest of A.B., 219 N.J. 542, 554 (2014) (citing In re Custodian of Records, Criminal Div. Manager, 214 N.J. 147, 162 (2013) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011))). "Thus, an appellate court should generally defer to a trial court's resolution of a discovery matter, provided its determination is not so wide of the mark or is not 'based on a mistaken understanding of the applicable law.'" Ibid. (quoting Pomerantz Paper, 207 N.J. at 371); see generally Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (holding that "abuse of discretion" "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'").

We are satisfied that the judge did not abuse his discretion in denying Ras' requests for further discovery or an opportunity to, anew, review supporting materials. The relevant materials for calculating the credit allocation were provided during the course of this litigation. Moreover, Ras' request, at this stage, fails to offer with any particularity the information he seeks and amounts to little more than a fishing expedition.

B.

Ras next argues the judge abused his discretion by executing the post-judgment order allowing for judgment credits to be applied when the payments were actually received and allocating the proceeds under the October 17, 2017 and April 16, 2018 orders. We disagree.

A "Chancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case." Marioni v. Roxy Garments Delivery Co., Inc., 417 N.J. Super. 269, 275 (App. Div. 2010). "[T]he court of equity has the power of devising its remedy and shaping it so as to fit the changing circumstances of every case and the complex relations of all the parties." Sears, Roebuck & Co. v. Camp, 124 N.J. Eq. 403, 411-12 (E. & A. 1938) (quoting Pom. Eq. Jur. § 109 (4th ed. 1918)). We "decline to intervene [regarding a judge's determination of an appropriate equitable remedy] absent an abuse of discretion, or where the judge's conclusions prove inconsistent with his own findings of fact." Marioni, 417 N.J. Super. at 275-76 (citation omitted).

i.

Ras argues that judgment credits should be applied when funds were available or when available funds were ordered to be distributed. Ras complains that "because of administrative, logistical, or processing delays entirely out of

[his] control, the funds were not transferred or finally deposited until days, weeks or months later . . . ."

We are satisfied that the judge properly exercised his discretion in denying Ras' request to now calculate judgment credits when funds were available or when available funds were ordered to be distributed. It is reasonable for the judge to determine, consistent with the prior judge's endorsement and considering the parties' history, to apply the credits when payments were actually received.

ii.

Ras argues credits for payment under the October 17, 2017 order should be allocated first to pre-judgment interest and credits for payment under the April 16, 2018 order should be allocated entirely to judgment principal. We disagree.

October 17, 2017

The October 17, 2017 order provides "[m]onies paid to Robert . . . pursuant to . . . this [o]rder shall be for purposes of satisfying the August 18, 2017, [o]rder, . . . shall be credited 50% to pre and post judgment interest and 50% towards the judgment principal." The August 18, 2017 order provides for

a turnover of funds and the application of those funds "to the Judgment (first to principal, then to interest)."

Here, Ras notes that the October 17, 2017 "[o]rder does not specify whether pre- or post- judgment interest should be credited first." He seeks to apply the "credit first to pre-judgment interest, since this has the effect of reducing the balance of the judgment on which post-judgment interest accrues, and results in less interest accruing and the judgment being satisfied sooner."

In response, Robert argues that the "allocations were . . . based on [d]efendants' requests, which the court accepted." At the October 17, 2017 hearing Robert's counsel argued "to allocate these payments to the principal judgment . . . so that Robert . . . receives the tax benefits . . . ."

The attorney for the co-defendants, with Ras' attorney present, argued to the prior judge that he "made a ruling not too long ago and you said 50/50. That's how you cut the baby." Counsel's oral argument paralleled a letter previously sent to the prior judge wherein counsel for Ras' co-defendants argued that "the allocation of these payments [should be] consistent with prior orders directing that 50[%] of the payment be credited toward judgment interest and 50[%] toward principal."

Ras took no position on the issue during the October 17, 2017 hearing. Instead, he remained silent on the allocation issues.

Moreover, Robert argues that "defendants were fully aware of [the allocations] at the time of receipt of payment[s] and the parties all relied on the allocations for tax payments for years."

Ras now argues that Robert should be judicially estopped from seeking to implement the October 17, 2017 order because he originally took the position contrary to what the order provided. However, Ras' argument misapplies judicial estoppel. "[E]stoppel principles preclude a party from disavowing a previous position if repudiation violates the demands of justice and good conscience." Morgan v. Raymours Furniture Co., Inc., 443 N.J. Super. 338, 342 (App. Div. 2016) (citations omitted). The doctrine does not, as Ras suggests, require a party to maintain an unsuccessful position despite a court order providing otherwise. Instead, after not receiving the relief he requested, Robert appropriately pursued the relief he was awarded. Estoppel is inapplicable in such a situation.

Thus, we are satisfied the judge did not abuse his discretion in denying Ras' request to apply the credit first to pre-judgment interest.

April 16, 2018

10

The April 16, 2018 order provides that "$3,500,000 . . . may be released . . . and a credit to the judgment shall be effectuated . . . ."  On May 25, 2018, the court heard argument regarding the allocation, between interest and principal, of the $3,500,000.  As of May 2018, the parties were operating under a March 3, 2017 order that provided "[a]llocation of the credit shall be first against post-judgment interest, then against pre-judgment interest, then against the judgment."

In the May 25, 2018 proceeding, Robert sought a revision of the March 3, 2017 order, because there were "efforts to undermine [collection] activities" and "efforts had been made to stymie the satisfaction of the judgment."  Therefore, Robert sought to have the full $3,500,000 "allocated all to the judgment principal . . . ."  This new allocation would have resulted in Robert receiving "a more favorable tax treatment [than] defendants."

Ras' co-defendants countered that allocating in the manner requested by Robert would result in their sustaining "significant tax effects."  Therefore, they requested that the court apply the apportionment from the March 3, 2017 order and "ask[ed] the court to apply [the $3,500,000] first to prejudgment and then

11

post-judgment interest and principal."[4]  The prior judge sided with defendants and enforced the March 3, 2017 order.

Here, Ras argues for relief in direct contradiction to the relief specified in the March 3, 2017 order.

Having reviewed the record, we are satisfied the judge did not abuse his discretion in denying Ras' request that the $3,500,000, provided for in the April 16, 2018 order and as controlled by the earlier March 3, 2017 order, should be allocated first to pre-judgment interest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4]  Ras' counsel arrived after argument and after the prior judge's decision.  The prior judge "underst[oo]d that there [was] one application we can get into even in [Ras' counsel's] absence; and that would be settling the apportionment of the existing judgment between the judgment itself and the interest component."  The better practice would have been to wait for all counsel or allow late arriving counsel to address the argument upon arrival.  Nevertheless, the prior judge denied Robert's request and merely enforced his existing March 17, 2017 order without any modification.  Under these circumstances, therefore, Ras was not prejudiced.