**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1167-24

CHARLES L. MAYES, II,

    Plaintiff-Appellant,

v.

SIGN DRIVE, LLC, PAOULO
QUISPILAYA, and JORGE
MARTINEZ,

    Defendants-Respondents.

_____

Submitted May 14, 2025 – Decided July 10, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-2837-23.

Lewis G. Adler and Perlman DePetris Consumer Law, LLC, attorneys for appellant (Paul DePetris, on the briefs).

O'Hanlon Schwartz, PC, attorneys for respondents (Noah A. Schwartz, of counsel and on the brief).

PER CURIAM

Plaintiff, Charles L. Mayes, II, appeals from the trial court's order of November 15, 2024, dismissing his complaint and requiring the parties to proceed to arbitration. Based on our careful review of the record and the application of well-established law, we conclude the parties' Arbitration Agreement is enforceable and affirm.

We glean the facts and procedural history from the record. On August 18, 2023, Mayes signed a "buyer's order" to purchase a used automobile from defendant, Sign Drive, LLC. According to the buyer's order, defendant, Paoulo Quispilaya, was the salesperson. In part, the buyer's order provided "[t]his is the complete agreement, there are no other written or oral agreements." In addition, the buyer's order included a check box next to the following provision: "A separate Arbitration Agreement is a part of this Contract." The box was not checked off.

Mayes also initialed and signed a separate three-page "Arbitration Agreement." The Arbitration Agreement, in part, provides:

> EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.
>
> YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY

CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.

IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.

. . . .

Agreement to Arbitrate

You or we may elect to resolve any Claim by neutral, binding arbitration and not by a court action. "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Transactions. It includes, without limitation, any claim, dispute or controversy involving: 1. the credit application; 2. the financed purchase of goods or other property; 3. the condition of the purchased goods or other property; 4. the retail installment sales contract or loan agreement financing the purchase of goods or other property; 5. any insurance, maintenance, service or other contracts you purchased in connection with the Transaction; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law, the validity, scope and interpretation of this Arbitration Agreement are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

3

A-1167-24

. . . .

Arbitrator's Qualifications and Authority

An arbitrator must be a lawyer with at least ten . . . years
of experience and familiar with consumer credit law or
a retired state or federal court judge. The arbitration
will be by a single arbitrator. In making an award, an
arbitrator shall follow governing substantive law and
any applicable statute of limitations. <u>The arbitrator will
decide any dispute regarding the arbitrability of a
Claim.</u> An arbitrator has the authority to order specific
performance, compensatory damages, punitive
damages, and any other relief allowed by applicable
law. An arbitrator's authority to make awards is limited
to awards to you or us alone. Claims brought by you
against us, or by us against you, may not be joined or
consolidated in arbitration with claims brought by or
against someone other than you, unless agreed to in
writing by all parties. No arbitration award or decision
will have any preclusive effect as to issues or claims in
any dispute with anyone who is not a named party to
the arbitration.

[Emphasis added.]

Even after signing the Arbitration Agreement, Mayes could reject the

agreement. The Arbitration Agreement provides:

Process To Reject This Arbitration Agreement

You may reconsider and reject your approval of this
Arbitration Agreement by sending a written notice to us
. . . . The notice must be postmarked within 30 days of
the date you signed this Arbitration Agreement. It
simply needs to state your decision to reject the

4

Arbitration Agreement and include your signature. It must also provide your name, our name and the date of this Arbitration Agreement.

On September 15, 2023—twenty-eight days after signing the Arbitration Agreement—counsel, on behalf of Mayes, sent a letter to defendants stating Mayes was "filing suit." Further, the letter stated that Mayes had "reconsider[ed] and reject[ed his] approval of the Arbitration Agreement."

Mayes filed a complaint against defendants, Sign Drive, the dealer; Quispilaya, the salesperson; and Jorge Martinez, the owner. In the eighty-five-page fourteen-count complaint, he alleged various causes of action against defendants.

Defendants moved to have the complaint dismissed and to proceed to arbitration. In an oral opinion following the parties' arguments, the trial court found the parties signed the "sale sheet" and the arbitration box was not checked. However, the court also found the parties signed "a separate [A]rbitration [A]greement" that included "a delegation clause." Therefore, the court concluded "it[ wa]s up to the arbitrator to determine whether or not there was sufficient waiver of the arbitration clause and whether their reasoning for that waiver was sufficient."

A-1167-24

On appeal, Mayes argues the trial court erred in ordering arbitration because: (1) he "opted out of" the Arbitration Agreement; (2) "[n]either the arbitration clause nor the class action waiver are enforceable as both were contained in a single document which the contract claims does[ no]t exist and the contract claims to be an integrated document"; (3) "the language of the class waiver was insufficiently specific to inform the consumer what rights they were waiving"; and (4) he filed a sufficient pleading.

"Orders compelling arbitration are deemed final for purposes of appeal." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); see also R. 2:3-2(b)(8). Our review of "those legal determinations [is] de novo." Ibid. There is "no deference to the interpretative analysis of . . . the trial court," and "arbitration provision[s are viewed] with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016). In conducting our review, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch, 215 N.J. at 186.

In Atalese v. U.S. Legal Service Group, L.P., the Court held "[a]n arbitration provision -- like any comparable contractual provision that provides for the surrendering of a constitutional or statutory right -- must be sufficiently clear." 219 N.J. 430, 436 (2014). "[U]nder New Jersey law, any contractual

6

'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Id. at 443 (second alteration in original) (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)).

"Arbitrability is whether the parties have agreed to submit to an arbitrator or a court the authority to decide whether a dispute is subject to arbitration." Morgan, 225 N.J. 295 at n.1. "The law presumes that a court, not an arbitrator, decides any issue concerning arbitrability." Id. at 304 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 994 (1995)).

"Parties to an arbitration agreement can agree to delegate to an arbitrator the issue of whether they agreed to arbitrate a particular dispute." Id. at 303 (citing Rent-A-Center, 561 U.S. 63, 68-69 (2010)). "A delegation clause is a clause in an arbitration agreement that assigns to the arbitrator the decision whether a dispute is subject to arbitration." Id. at 295 n.1.

"To overcome the judicial-resolution presumption, there must be 'clea[r] and unmistakabl[e]' evidence 'that the parties agreed to arbitrate arbitrability.'" Id. at 304 (alterations in original) (quoting First Options, 514 U.S. at 944). Therefore, "[u]nless the parties have clearly delegated to an arbitrator the decision whether the parties agreed to arbitration, the issue is for a court to

resolve."  Id. at 295-96.  Certainly, "[s]ilence or ambiguity in an agreement does not overcome the presumption that a court decides arbitrability."  Id. at 304.

Applying this well-established law, we conclude the Arbitration Agreement is enforceable.  We recognize the language in the "buyer's order" that stated it was "the complete agreement, [and] there are no other written or oral agreements."  In addition, we acknowledge the buyer's order did not have the Arbitration Agreement box checked off.  However, the parties executed a stand-alone Arbitration Agreement, and Mayes offers no legal basis to support his assertion that the Arbitration Agreement lacked enforceability.  See Morgan v. Raymours Furniture Co., Inc., 443 N.J. Super. 338, 344 (App. Div. 2016) (noting the enforceability of "stand-alone" arbitration agreements).

Next, we consider whether the Arbitration Agreement comports with Atalese.  The Arbitration Agreement stated:  (1) the parties' disputes would be "decided by arbitration, and not by a court or by jury trial"; (2) if the matter was arbitrated, Mayes would give up his right to participate in a class action; (3) arbitration provides "generally more limited" "discovery" and "rights to appeal" than "in court"; (4) "[y]ou or we may elect to resolve any Claim by neutral, binding arbitration and not by a court action"; and (5) "[i]f either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or

8

other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis." We conclude the Arbitration Agreement "clearly and unambiguously" advised the parties they were waiving their rights to go to court. See Atalese, 219 N.J. 443.

Lastly, we consider whether the Arbitration Agreement's "arbitrability" language was "clear and unmistakable" under Morgan. In Morgan, the Court considered "[t]he 'Agreement to Arbitrate' [which] . . . read[], in part: 'Any disputes, claims, or controversies . . . or . . . any objection to arbitrability . . . shall be resolved pursuant to this paragraph.'" 225 N.J. at 306.

The Court noted the "paragraph d[id] not explain that an arbitrator will decide whether the parties agreed to arbitrate legal claims, including statutory violations; nor d[id] it explain that arbitration is a substitute for bringing a claim before a court or jury." Ibid. The Court held "the arbitration provision . . . d[id] not have a clearly identifiable delegation clause." Ibid. Thus, the Court concluded, "the arbitration provision and purported delegation clause" were unenforceable. Id. at 311.

Here, on the contrary, the Arbitration Agreement does explain the arbitrator's authority and that the parties were waiving their right to go to court. Further, the Arbitration Agreement states "[t]o the extent allowed by law, the

validity, scope and interpretation of this Arbitration Agreement are to be decided by neutral, binding arbitration" and "[t]he arbitrator will decide any dispute regarding the arbitrability of a Claim." The Arbitration Agreement's language, regarding arbitrability, is "clear and unmistakable." See id. at 304.

We offer no opinion on whether Mayes "opted-out" of the Arbitration Agreement or any other issues subject to arbitration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hadley

Clerk of the Appellate Division

10                                                                      A-1167-24